# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FILED

-----------------------------------------------------------------x

2010 JAN 15 P 2: 35

**MEL THOMPSON**

**Plaintiff**

CASE NO.

3:10 cv 71 (JBA)

-against-

**SAM RIZZITELLI**
**SHELIA PARIZO**
**SANDY WATSON**
**JAMES WATSON**
**DAN SEXTON**
**ANITA DUGGATTO**
**CHRISTINE ROBINSON**
**RONALD SILL**
**JOYCE SILL**
**PAUL VARSANIK, JR.**
**DAN SEXTON**
**JOHN ORAZIETTI**
**DERBY DEMOCRATIC TOWN COMMITTEE**

-----------------------------------------------------------------x

**Defendants**

## COMPLAINT

**Plaintiff Pro Se as and for his complaint against defendants, allege as follows:**

### JURISDICTION AND VENUE

1. The Court has jurisdiction of the subject matter of this action pursuant to

   Amendments I, IX, XIV §1 and XV of the United States Constitution,

   42 U.S.C. §1983, 42 U.S.C. §1985, 42 U.S.C. §1986, Title III of the Civil Rights

   Act of 1964 Pub.L. 88-352, 78 Stat. 241 and the National Voting Rights Act of

   1965 (42 U.S.C. § 1973–1973aa-6)

2.   The district court has venue jurisdiction pursuant to law as the acts complained of

occurred, in substantial part, in the district of Connecticut, and the primary

place of business of the primary defendant(s) is located in the district of

Connecticut, codified at 28 U.S.C. § 1391(b).

### SUMMARY OF FEDERAL CLAIMS:

3.   The plaintiff brings this action inter alia to vindicate his Constitutional and Civil

rights pursuant to the U.S. Constitution and all federal statues

enumerated and applicable to the claims of the plaintiff stated herein.

4.   The plaintiff alleges that his 1st Amendment right to free speech has

been abridged and denied by defendants  Sam Rizzitelli, Shelia Parizo, Sandy

Watson, James Watson, Paul Varsanik, Jr., Anita Duggatto,

Ronald Sill, Joyce Sill, Dan Sexton, John Orazietti, Christine Robinson and the

Derby Democratic Town Committee, (herein after known collectively as the

Derby Defendants) acting  under color of law.

5.   The plaintiff alleges that his 1st Amendment right to petition for redress

has been abridged and denied by the Derby defendants acting under color of law.

6.   The plaintiff alleges that his 1st Amendment right to Assembly

has been abridged and denied by the Derby defendants acting under color of law.

7. The plaintiff alleges that his 1st Amendment right to Association has been abridged and denied by the Derby defendants acting under color of law.

8. The plaintiff alleges that his 9th Amendment right to privacy has been abridged and denied by the acts of defendant Sam Rizzitelli acting under color of law.

9. The plaintiff alleges that his 14th Amendment right to due process has been abridged and denied by the Derby defendants acting under color of law.

10. The plaintiff alleges that his 14th Amendment right to equal protection has been abridged and denied by the Derby defendants acting under color of law.

11. The plaintiff alleges that his 15th Amendment right to vote has been abridged and denied by the acts of the Derby defendants acting under color of law.

12. The plaintiff alleges that the Derby defendants acting under color of law, have caused the plaintiff to suffer a deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States in violation of 42 U.S.C. §1983 (3).

**13.** The plaintiff alleges that the Derby defendants acting under color of law have conspired against the plaintiff for the purpose of depriving, directly and indirectly through threats, intimidation and illegal acts the constitutional and civil rights of the plaintiff and said acts have hindered the plaintiff from securing equal protection of the laws, the right to vote and the right to support or advocate a position in violation of 42 U.S.C. §1985 (3).

**14.** The plaintiff alleges that the Derby defendants acting under color of law have conspired against the plaintiff for the purpose of depriving, directly and indirectly through threats, intimidation and illegal acts the constitutional and civil rights of the plaintiff and said acts have hindered the plaintiff from exercising his Constitutional and civil rights pursuant to Amendments I, IX, XIV §1 and XV of the United States Constitution,42 U.S.C. §1983, 42 U.S.C. §1986, Title III of the Civil Rights Act of 1964 Pub.L. 88-352, 78 Stat. 241 and the National Voting Rights Act of 1965 (42 U.S.C. § 1973–1973aa-6) in violation of 42 U.S.C. §1985 (3).

**15.** The plaintiff alleges that the Derby defendants acting under color of law have conspired against the plaintiff and said conspiracy has damaged the plaintiff in his person and property and resulted in the plaintiff being denied rights, privileges and immunities secured to the plaintiff by the Constitution of the United States, and the laws of the United States and in violation of 42 U.S.C. §1985 (3)

16. The plaintiff alleges that the Derby defendants acting under color of law knew of and refused to prevent any and all of the wrongs conspired to be done, and alleged herein against the plaintiff in violation of 42 U.S.C. §1986.

17. The plaintiff alleges that the Derby defendants acting under color of law have deprived him of access to public facilities on grounds of race in violation of Title III of the Civil Rights Act of 1964 Pub.L. 88-352, 78 Stat. 241.

18. The plaintiff alleges that the Derby defendants acting under color of law have imposed and applied voting qualification and prerequisites to voting, standards, practices, and procedures in a manner which resulted in a denial and abridgement the right of the plaintiff to vote on account of race or color in violation of the National Voting Rights Act of 1965 (42 U.S.C. § 1973–1973aa-6)

19. Defendant Sam Rizzitelli acting under color of law has published and republished false and defamatory statements to law enforcement officials resulting in the issuance of a search warrant and confiscation of the plaintiffs office computer, thus causing the plaintiffs privacy to be invaded in violation of the 9th Amendment to the U.S. Constitution.

## PARTIES:

**20.** MEL THOMPSON

The Plaintiff is a registered Democratic elector in the City of Derby and a
former Democratic candidate for Mayor of Derby 2009 .

**21.** SAM RIZZITELLI

Is the past and present Chairman of the Derby Democratic Party, an
unincorporated Political Association and quasi government entity that is an
elected body responsible for the organization and operational support of
Democratic candidates in the city of Derby CT

**22.** SHELIA PARIZO

Is the past 1st Ward Chairwoman of the Derby Democratic Party, an
unincorporated Political Association and quasi government entity that is an
elected body responsible for the organization and operational support of
Democratic candidates in the city of Derby CT

**23.** DAN SEXTON

Is the past 2nd Ward chairman and member of the Derby Democratic Town
Committee, an unincorporated Political Association and quasi government entity
that is an elected body responsible for the organization and operational support of
Democratic candidates in the city of Derby CT

**24.** SANDY WATSON

Is the current 3rd Ward Chairwoman of the Derby Democratic Party, an unincorporated Political Association and quasi government entity that is an elected body responsible for the organization and operational support of Democratic candidates in the city of Derby CT

**25.** JAMES WATSON

Is a resident of the city of Derby, State of Connecticut and the spouse to defendant Sandy Watson.

**26.** ANITA DUGGATTO

Is the current Treasurer and former Chairwoman of the Derby Democratic Party, an unincorporated Political Association and quasi government entity that is an elected body responsible for the organization and operational support of Democratic candidates in the city of Derby CT

**27.** RONALD SILL

Is a member of the Derby Democratic Town Committee, an unincorporated Political Association and quasi government entity that is an elected body responsible for the organization and operational support of Democratic candidates in the city of Derby CT

**28.** JOYCE SILL

Is a resident of the City of Derby active in Derby politics and known to all of the other defendants.

**29.** PAUL VARSANIK, JR.

Is a member of the Derby Democratic Town Committee, an unincorporated
Political Association and quasi government entity that is an elected body
responsible for the organization and operational support of Democratic candidates
in the city of Derby CT

**30.** JOHN ORAZIETTI

Is a member of the Derby Democratic Town Committee, an unincorporated
Political Association and quasi government entity that is an elected body
responsible for the organization and operational support of Democratic candidates
in the city of Derby CT

**31.** CHRISTINE ROBINSON

Is a member of the Derby Democratic Town Committee, an unincorporated
Political Association and quasi government entity that is an elected body
responsible for the organization and operational support of Democratic candidates
in the city of Derby CT

**32.** DERBY DEMOCRATIC TOWN COMMITTEE

Is an unincorporated  Political Association and quasi government entity that is an
elected body responsible for the organization and operational support of
Democratic candidates in the city of Derby CT

## FEDERAL CLAIMS FACTS:

33. Over a period of about five years the plaintiff has had a personal, political and professional relationship with defendant Sam Rizzitelli (hereinafter known as Rizzitelli)

34. Over a period of about four years the plaintiff has had a political relationship with defendant Shelia Parizo (hereinafter known as Parizo)

35. Over a period of about four years the plaintiff has had a political relationship with defendant Sandy Watson (hereinafter known as S.Watson)

36. Over a period of about four years the plaintiff has had a political relationship with defendant James Watson (hereinafter known as J. Watson)

37. Over a period of about four years the plaintiff has had a political relationship with defendant Anita Duggatto (hereinafter known as Duggatto)

38. Over a period of about 25 years the plaintiff has either known or had a political and personal relationship with defendant Christine Robinson and or her husband James (hereinafter known as Robinson)

39. Over a period of about 35 years the plaintiff has either known or had a political and personal relationship with defendant Ronald Sill (hereinafter known as R. Sill)

40. Over a period of about 35 years the plaintiff has either known or had a political and personal relationship with defendant Joyce Sill(hereinafter known as J. Sill)

41. Over a period of about 25 years the plaintiff has either known or had a political and personal relationship with defendant Paul Varsanik, Jr. (hereinafter known as Varsanik)

42. Over a period of about 2 years the plaintiff has either known or had a political and personal relationship with defendant Dan Sexton(hereinafter known as Sexton)

43. Over a period of about 25 years the plaintiff has either known or had a political and personal relationship with defendant John Orazietti (hereinafter known as Orazietti)

44. Over a period of about 35 years the plaintiff has either volunteered, attended meetings or worked on behalf of defendant Derby Democratic Party (hereinafter known as DTC).

45. Over a period of five years the plaintiff has performed legal research work for and worked with defendant Rizzitelli on numerous political projects.

46. Although the plaintiff and Rizzitelli had not always agreed politically on candidates, nevertheless they kept this separate from their personal and business relationship.

47. All Derby defendants including defendant Rizzitelli (who had actual knowledge) suspected or knew that the plaintiff was the blogger of the "DERBYPOLITICS" blog (hereinafter known as DPB).

48. All Derby defendants have had meetings at defendant Parizo's home and other locations excluding the plaintiff with the intent to conspire against the plaintiff.

49. All Derby defendants have had conversations excluding the plaintiff with the intent to conspire against the plaintiff.

50. Said meetings and conversations were for the sole purpose of denying the plaintiff ballot access as a candidate for Mayor of Derby.

51. Said meetings and conversations sole intent were to deny the plaintiff ballot access as a candidate for Mayor of Derby and thus abridge and deny the plaintiffs his Constitutional and Civil Rights to pursue elected office.

52. Said meetings and conversations were conducted under color of law by the named defendants acting and meeting as elected officials and authorized agents thereof of defendant DTC.

53. The plaintiff had been told more than once by defendant Rizzitelli that he (the plaintiff) was "expected to give defendant "Phil Robertson's job" if the plaintiff were elected and without such a commitment he (the plaintiff) would "never be on the ballot".

54. Furthermore the plaintiff was "ordered by defendant Rizzitelli to "stop bashing Marc on the blog, your pissing him off".

55. The plaintiff has refused to do any of the things demanded on more than one occasion going back to December 2006.

56. The plaintiff had been told more than once by defendant Rizzitelli that not "playing ball" and "taking care of Marc" would "destroy any chance of you ever being the mayor".

57. The plaintiff had been told more than once by defendant Rizzitelli that he and the other Derby defendants were having "meetings" that were private and the plaintiffs candidacy was discussed.

58. The plaintiff based on discussions with some at those meetings in unguarded moments learned months ago that defendant Rizzitelli had assured them that the plaintiff "would never be the mayor or have his name on an election ballot".

59. All Derby defendants enjoyed the blog when it pocked fun at Republicans but were furious when it parodied them politically.

60. Even though this was the case all Derby defendants benefited from the DPB and its opposition to a city referendum opposed by the Derby defendants, the plaintiff and a majority of the rank and file enrolled Democrats in the city.

61. On April 21st 2009 sometime after 8pm the plaintiff was walking up Elizabeth Street in Derby to attend a victory celebration at the office of defendant Duggatto.

62. Upon stepping on the front step of defendant Duggatto's office the plaintiff was met at the door by defendant Robinson who pushed the defendant off the step at which time the plaintiff told her to "get your fucking hands off me".

63. Tension had existed between the two since several blog postings critical of the funding of the Storm Engine Company Ambulance Corp appeared, however prior to that there had been no problems in the relationship.

64. Upon entering the office of defendant Duggatto the plaintiff heard defendant Robinson behind him swearing at him threatening to kill him.

**65.** The plaintiff moved to the far side of the room to avoid defendant Robinson who was being restrained and continuing to threaten physically and verbally the plaintiff.

**66.** As soon as an opportunity to leave appeared the plaintiff left the building and drove to his home.

**67.** During the course of approximately two hours the plaintiff had multiple phone conversations with defendant Rizzitelli who was still at the office of defendant Duggatto's office and had been drinking for several hours.

**68.** During the course of these conversations defendant Rizzitelli made clear that the incident with defendant Robinson had destroyed the plaintiffs chances as a candidate for mayor no matter who was right or wrong.

**69.** Defendant Rizzitelli offered to support the plaintiff if he would resign from the town committee, not run for mayor and instead run for the U.S. Senate.

**70.** The plaintiff listened but declined to go along with this plan.

**71.** Defendant Rizzitelli's speech became more and more slurred over a course of hours and the plaintiff on two separate occasions offered to come get defendant Rizzitelli and to drive him home, an offer Rizzitelli refused.

72. The next day April 22nd 2009 the plaintiff out of concern called the defendants cell phone number of 203-736-1966 and finally about 10:00am was able to get a hold of defendant Rizzitelli.

73. Defendant Rizzitelli stated that he was "still drunk from the night before" and that he had a "splitting headache".

74. The plaintiff advised him that he should go home and sleep this off, at which time defendant Rizzitelli stated that he would.

75. The same evening April 22nd 2009 around 5:30pm, the plaintiff again called defendant Rizzitelli to inquire about his "hangover" at which time the plaintiff and defendant Rizzitelli again discussed the issue of the plaintiffs status as Democratic Town Committee member and a candidate for Mayor.

76. Defendant Rizzitelli repeated his demands that the plaintiff resign from the DTC and withdraw as a candidate for Mayor at which the plaintiff refused and defendant Rizzitelli hung up the phone.

77. Between April 22nd 2009 and April 30th 2009, the plaintiff spoke to Frank Lazowski, a DTC member and Tax Board official in the city of Derby on several occasions.

**78.** During these conversations, Lazowski told the plaintiff that defendant Rizzitelli stated that the plaintiff "was drunk every day by 2pm" .

**79.** During these conversations, Lazowski told the plaintiff that defendant Rizzitelli "slept in his car on Elizabeth Street" on the night of April 21st to the morning of April 22nd because in the words of Mr. Lazowski "Sam was too drunk to drive home".

**80.** The plaintiff confronted defendant Rizzitelli and informed him that he (the plaintiff) would take  legal action against him because of said defamatory comments about the plaintiff to Mr. Lazowski and other third parties.

**81.** Defendant Rizzitelli and the plaintiff had several heated phone calls regarding the defamatory comments and the plaintiffs option to pursue a legal remedy regarding said comments to third parties by defendant Rizzitelli.

**82.** The plaintiff decided to publish a story regarding defendant Rizzitelli's night sleeping in his vehicle on DPB.

**83.** Once said story was published, defendant Rizzitelli made several calls to the plaintiff threatening inter alia "arrest" "law suits" and "political problems" if the plaintiff did not remove said post from DPB.

**84.** At no time did defendant Rizzitelli deny the truthfulness of the post and actually admitted that the post were "true".

**85.** Defendant Rizzitelli offered a "couple hundred bucks" if the plaintiff would remove the post.

**86.** At no time did the plaintiff ask for any money nor did he state any amount furthermore the plaintiff informed defendant Rizzitelli that "this is not about you it is about your defamatory comments that have injured me".

**87.** Eventually the plaintiff and defendant Rizzitelli hammered out a verbal settlement agreement that the plaintiff was to email to Rizzitelli and upon its execution the plaintiff in consideration thereof would remove said post on DPB.

**88.** Said agreement inter alia called for a payment of $500 to the plaintiff as payment for the defamatory and damaging comments made to Lazowski and other third parties about the plaintiff by defendant Rizzitelli.

89. Although the terms were exactly as defendant Rizzitelli offered and as accepted by the plaintiff, defendant Rizzitelli in subsequent calls tried to back out of the agreement and even at one point offered to "come by and give you money" which the plaintiff refused and warned defendant Rizzitelli that he would be arrested if he (Rizzitelli) set foot on the plaintiffs property.

90. The plaintiff at no time dictated any of the terms of said settlement agreement and only set to paper the offer of defendant Rizzitelli.

91. Defendant Rizzitelli and the plaintiff continued to argue over the terms of the agreement up until and including Wednesday May 13th 2009.

92. According to an affidavit and application for a search and seizure warrant, defendant Rizzitelli contacted the Derby police on April 29th 2009 and falsely reported that the plaintiff was trying to extort money from him in exchange for the post on the DPB being taken down.

93. Said extortion plan involved the plaintiff threatening to provide said post about defendant Rizzitelli to his employer the Hartford Insurance Company if he (Rizzitelli) did not pay the plaintiff.

**94.** On May 14th three Police officers from the Derby Police Department executed a search warrant on the plaintiffs home office seizing his office computer.

**95.** The plaintiff personally knows the officers who allowed the plaintiff to remove his work related files and load them onto an external drive before they took possession of the computer.

**96.** Later that day the plaintiff voluntarily went to the Derby police provided a voluntary statement.

**97.** The plaintiff has not removed the post on the DPB but has now made the entire blog password protected so as to preserve all evidence.

**98.** The negative publicity from the search warrant was sufficient to drive the plaintiff from the mayors race.

**99.** The Derby Defendants knew that the resulting negative publicity from the search warrant would accomplish what months of threats had not, sufficient to drive the plaintiff from the mayors race.

**100.** The false report to the police was the final act of a conspiracy and plan to deny and abridge the Constitutional and Civil Rights of the plaintiff as set forth herein.

**101.**    Defendant Rizzitelli withdrew his criminal complaint against the plaintiff knowing that it was false and that no evidence existed to substantiate it.

**102.**    Defendant Rizzitelli filed a civil suit alleging inter alia defamation against the plaintiff.

**103.**    Defendant Rizzitelli along with defendants James Watson, John Orazietti, Ron Sill, Shelia Parizo, Dan Sexton, Christine Robinson and Anita Duggato agreed to perjure themselves in State Court in the furtherance of the conspiracy.

**104.**    Defendants Christine Robinson and Anita Duggato agreed to and did make false statements to further damage the plaintiff to the news media in the furtherance of the conspiracy.

**105.**    Each and every defendant had knowledge of said conspiracy and plan, each played a role and each bear direct responsibility for the deprivations of Constitutional and Civil Rights suffered by the plaintiff.

## FEDERAL CLAIMS FOR RELIEF

## COUNT ONE VIOLATION OF 1ST AMENDMENT RIGHT TO FREE SPEECH BY THE DERBY DEFENDANTS

106.    The plaintiff realleges all as set forth from 1-107 as if incorporated herein

107.    The Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the Derby Democratic Town Committee (hereinafter known as DTC) did prevent and otherwise hinder the plaintiff from speaking freely at Democratic Town Committee meetings.

108.    Specifically the plaintiff was harassed, yelled at, threatened and other wise intimidated and even ordered not to speak although this is his right as a member of the Democratic Town Committee, as a candidate and a citizen.

109.    Specifically the plaintiff was told not to speak on political matters and was threatened with "serious consequences" by defendant Rizzitelli if he continued to exercise his right to free speech at said meetings.

110.    Specifically the plaintiff was told by the Derby defendants separately and collectively to not discus political issues at said meetings.

111.    The plaintiff was threatened separately and individually by the Derby defendants that he would be denied access to speak to Democratic Town Committee members at meetings if he did not stop posting negative comments about Democrats on the plaintiffs blog at derbypolitics.com

112.    The  Derby defendants acted in concert to stop or other wise remove said blog postings through repeated threats delivered by defendant Rizzitelli to the plaintiff.

113.    Specifically defendant Parizo even admitted that there was an effort by the defendants to stop said blog postings even though said postings were a form of protected speech pursuant to the 1st Amendment to the United States Constitution.

114.    Specifically defendant Parizo agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

115.    Specifically defendant James Watson agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

116.    Specifically defendant Sandy Watson agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

117.    Specifically defendant John Orazietti agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

118.    Specifically defendant Ron Sill agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

119.    Specifically defendant Dan Sexton agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

120.    Specifically defendant Christine Robinson agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights .

121.    Specifically defendant Rizzitelli did perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

122.     Said acts of perjury were designed to force and did force the plaintiff to remove his blog at derbypolitics.com from public view thus denying the plaintiff his 1st Amendment right to free speech.

123.     The organized group and individual efforts have abridged the plaintiffs right to free speech as set forth in the 1st Amendment to the United States Constitution.

124.      The acts of the defendants have resulted in the plaintiff being denied his 1st Amendment right to free speech and has thus caused the plaintiff damages.

## COUNT TWO VIOLATION OF 1ST AMENDMENT RIGHT TO PETITION FOR REDRESS BY THE DERBY DEFENDANTS

125.     The plaintiff realleges all as set forth from 1-126 as if incorporated herein.

126.     Specifically, the Derby defendants did deny the plaintiff an opportunity to fairly compete for elective office and engage in activities such as public speaking at town committee meetings through threats and intimidation.

127.    The plaintiff alleges specifically that the Derby Defendants did meet and communicate with each other with the intent to prevent the plaintiff from being on the November ballot for Mayor of Derby.

128.    The plaintiff alleges that specifically these meetings were accomplished in person, by phone and by email and said meetings purpose were to devise a plan to deny the plaintiff access to the November ballot for Mayor of Derby.

129.    Specifically on April 21, 2009, defendant Christine Robinson did assault and threaten to kill the plaintiff with the intent and purpose of intimidating the plaintiff from not being a candidate.

130.    Specifically defendant Parizo agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

131.    Specifically defendant James Watson agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

132.    Specifically defendant Sandy Watson agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

133.    Specifically defendant John Orazietti agreed to perjure himself in State
        Superior Court to prevent the plaintiff from further exercising his 1st
        Amendment Rights.

134.    Specifically defendant Ron Sill agreed to perjure himself in State Superior
        Court to prevent the plaintiff from further exercising his 1st Amendment
        Rights.

135.    Specifically defendant Dan Sexton agreed to perjure himself in State
        Superior Court to prevent the plaintiff from further exercising his 1st
        Amendment Rights.

136.    Specifically defendant Christine Robinson agreed to perjure herself in
        State Superior Court to prevent the plaintiff from further exercising his 1st
        Amendment Rights.

137.    Specifically defendant Rizzitelli did perjure himself in State Superior
        Court to prevent the plaintiff from further exercising his 1st Amendment
        Rights.

138.    Said acts of perjury were designed to force and did force the plaintiff to remove his blog at derbypolitics.com from public view thus denying the plaintiff his 1st Amendment right to redress.

139.    The acts of the Derby defendants have resulted in the plaintiffs 1st amendment right to petition for redress being abridged and has thus caused the plaintiff damages.

140.    The plaintiff had a constitutional right to petition for redress as a candidate and the Derby defendants did conspire and act to prevent the plaintiff from obtaining his right to redress through obtaining ballot access as a candidate for Mayor of Derby via a petitioning process.

141.    The acts of the Derby defendants have resulted in the plaintiff being denied his 1st Amendment right to petition for redress and has thus caused the plaintiff damages.

## COUNT THREE VIOLATION OF 1ST AMENDMENT RIGHT TO ASSEMBLY BY THE DERBY DEFENDANTS

142.    The plaintiff realleges all as set forth from 1-143  as if incorporated herein

143.    The Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the DTC did prevent and other wise hinder the plaintiff from exercising his right of Assembly pursuant to the 1st Amendment of the U.S. Constitution.

144.    Specifically, the Derby defendants did deny the plaintiff an opportunity to
        fairly compete for elective office and engage in activities such as public
        speaking at town committee meetings through threats and intimidation.

145.    Specifically, the Derby defendants did deny the plaintiff an opportunity to
        fairly compete for the Democratic nomination of the Derby Democratic
        Town Committee by blocking his access to meetings of said body through
        threats and intimidation.

146.    Specifically, the Derby defendants collectively and individually under
        color of law in their individual and others in their collective capacity as
        members of the DTC have engaged in a public and private campaign to
        hinder and other wise stop the plaintiff from attending any Town
        Committee meetings and thus denying the plaintiff his right to peacefully
        assemble.

147.    Specifically defendant Rizzitelli did order all other defendants to not
        provide notice of DTC meeting thus denying the plaintiff access and a
        right to assemble.

148.    Specifically, defendant Watson in her capacity as third ward chair did
        purposely fail to provide notice of DTC meetings and events in an attempt
        to prevent the plaintiff from exercising his right to assemble.

149.    Specifically on April 21, 2009, defendant Christine Robinson did assault and threaten to kill the plaintiff with the intent and purpose of intimidating the plaintiff from assembling and pursuing his 1st Amendment Rights.

150.    Specifically defendant Parizo agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

151.    Specifically defendant James Watson agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

152.    Specifically defendant Sandy Watson agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

153.    Specifically defendant John Orazietti agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

154.    Specifically defendant Ron Sill agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

155.  Specifically defendant Dan Sexton agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

156.  Specifically defendant Christine Robinson agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

157.  Specifically defendant Rizzitelli did perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

158.  The acts of the Derby defendants have resulted in the plaintiff being denied his 1st Amendment right to Assemble has thus caused the plaintiff damages.

## COUNT FOUR VIOLATION OF 1ST AMENDMENT RIGHT TO ASSOCIATION BY THE DERBY DEFENDANTS

159.  The plaintiff realleges all as set forth from 1-160  as if incorporated herein

160.  Specifically, the Derby defendants did deny the plaintiff an opportunity to fairly compete for elective office and engage in activities such as public speaking at town committee meetings and associate with DTC members through threats and intimidation.

161.    Specifically, the Derby defendants did deny the plaintiff an opportunity to fairly compete for the Democratic nomination of the Derby Democratic Town Committee by blocking his access to meetings of said body and thus denying him the ability to legally associate with DTC members through threats and intimidation.

162.    Specifically, the Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the DTC have engaged in a public and private campaign to hinder and other wise stop the plaintiff from attending any Town Committee meetings and thus denying the plaintiff his right to associate.

163.    Specifically defendant Rizzitelli did order all other defendants to not provide notice of DTC meeting thus denying the plaintiff access and a right to Associate.

164.    Specifically, defendant Watson in her capacity as third ward chair did purposely fail to provide notice of DTC meetings and events in an attempt to prevent the plaintiff from exercising his right to Associate.

165.    Specifically on April 21, 2009, defendant Christine Robinson did assault and threaten to kill the plaintiff with the intent and purpose of intimidating the plaintiff from assembling and pursuing his 1st Amendment Rights.

166.    Specifically defendant Parizo agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

167.    Specifically defendant James Watson agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

168.    Specifically defendant Sandy Watson agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

169.    Specifically defendant John Orazietti agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

170.    Specifically defendant Ron Sill agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

171.    Specifically defendant Dan Sexton agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

172.    Specifically defendant Christine Robinson agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

173.    Specifically defendant Rizzitelli did perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

174.    The acts of the Derby defendants have resulted in the plaintiff being denied his 1st Amendment right to Associate has thus caused

175.    The acts of the defendants have resulted in the plaintiff being denied his 1st Amendment right of Association has thus caused the plaintiff damages.

## COUNT FIVE VIOLATION OF 9TH AMENDMENT RIGHT TO PRIVACY BY DEFENDANT SAM RIZZITELLI

176.    The plaintiff realleges all as set forth from 1-177 as if incorporated herein

177.    Defendant Sam Rizzitelli did file a false, malicious, inaccurate an fictitious report with the Derby Police Department thus causing a search warrant to be issued for the plaintiff business computer.

178.    Specifically, defendant Rizzitelli falsely and intentionally claim that the
        plaintiff tried extort money from defendant Rizzitelli.

179.    Said false and intentionally claims resulted in unwanted and negative
        media attention focused on false claims that have financially damaged he
        plaintiff.

180.    Said false and intentionally claims resulted in unwanted and negative
        attention that violate the plaintiffs right to be let alone.

181.    Defendant Rizzitelli's actions resulted in a gross invasion of the plaintiffs
        privacy as protected by the 9th Amendment to the U.S. Constitution.

182.    The plaintiff has been damaged by the defendants malicious acts.

## COUNT SIX VIOLATION OF 14TH AMENDMENT RIGHT OF DUE PROCESS BY THE DERBY DEFENDANTS

183.    The plaintiff realleges all as set forth from 1-184 as if incorporated herein

184.    The Derby defendants collectively and individually under color of law in
        their individual and others in their collective capacity as members of the
        DTC did prevent and otherwise hinder the plaintiffs due process rights
        pursuant to the 14th Amendment of the U.S. Constitution.

185.    The Derby defendants are not private actors but quasi elected officials and agents of the city of Derby.

186.    As DTC members and agents they have the power and substantial influence over political appointments of Democratic officials, ballot access and numerous other functions that are identical to state actors.

187.    Specifically, the Derby defendants did deny the plaintiff an opportunity to fairly compete for elective office and engage in activities such as public speaking at town committee meetings through threats and intimidation.

188.    Specifically, the Derby defendants did deny the plaintiff an opportunity to fairly compete for the Democratic nomination of the Derby Democratic Town Committee by blocking his access to meetings of said body through threats and intimidation.

189.    Specifically, the Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the DTC have engaged in a public and private campaign to hinder and other wise stop the plaintiff from attending any Town Committee meetings and thus denying the plaintiff his right to due process.

190.    Specifically defendant Rizzitelli did order all other defendants to not provide notice of DTC meeting thus denying the plaintiff access and a right to Right to due process.

191.    Specifically, defendant Watson in her capacity as third ward chair did purposely fail to provide notice of DTC meetings and events in an attempt to prevent the plaintiff from exercising his right to Right to due process.

192.    Specifically on April 21, 2009, defendant Christine Robinson did assault and threaten to kill the plaintiff with the intent and purpose of intimidating the plaintiff from assembling and pursuing his 14th Amendment Rights.

193.    Specifically defendant Parizo agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 14th Amendment Rights

194.    Specifically defendant James Watson agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

195.    Specifically defendant Sandy Watson agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 14th Amendment Rights

196.   Specifically defendant John Orazietti agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 14th Amendment Rights

197.   Specifically defendant Ron Sill agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 14th Amendment Rights

198.   Specifically defendant Dan Sexton agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 14th Amendment Rights

199.   Specifically defendant Christine Robinson agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 14th Amendment Rights

200.   Specifically defendant Rizzitelli did perjure himself in State Superior Court to prevent the plaintiff from further exercising his 14th Amendment Rights

201.    The acts of the Derby defendants have resulted in the plaintiff being denied his 14th Amendment right of due process and has thus caused the plaintiff damages.

## COUNT SEVEN VIOLATION OF 14TH AMENDMENT RIGHT OF EQUAL PROTECTION BY THE DERBY DEFENDANTS

202.    The plaintiff realleges all as set forth from 1-203 as if incorporated herein.

203.    The Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the DTC did prevent and other wise hinder the plaintiffs equal protection rights pursuant to the 14th Amendment of the U.S. Constitution.

204.    The Derby defendants are not private actors but quasi elected officials and agents of the city of Derby.

205.    As DTC members and agents they have the power and substantial influence over political appointments of Democratic officials, ballot access and numerous other functions that are identical to state actors.

206.    Specifically, the Derby defendants did deny the plaintiff an opportunity to fairly compete for elective office and engage in activities such as public speaking at town committee meetings through threats and intimidation.

207.    Specifically, the Derby defendants did deny the plaintiff an opportunity to fairly compete for the Democratic nomination of the Derby Democratic Town Committee by blocking his access to meetings of said body through threats and intimidation.

208.    Specifically, the Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the DTC have engaged in a public and private campaign to hinder and other wise stop the plaintiff from attending any Town Committee meetings and thus denying the plaintiff his right to equal protection.

209.    Specifically defendant Rizzitelli did order all other defendants to not provide notice of DTC meeting thus denying the plaintiff access and a right to Equal Protection.

210.    Specifically, defendant Watson in her capacity as third ward chair did purposely fail to provide notice of DTC meetings and events in an attempt to prevent the plaintiff from exercising his right to Equal Protection.

211.    Specifically on April 21, 2009, defendant Christine Robinson did assault and threaten to kill the plaintiff with the intent and purpose of intimidating the plaintiff from assembling and pursuing his 14th Amendment Rights.

212.    Specifically defendant Parizo agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 14th Amendment Rights.

213.    Specifically defendant James Watson agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 1st Amendment Rights.

214.    Specifically defendant Sandy Watson agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 14th Amendment Rights

215.    Specifically defendant John Orazietti agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 14th Amendment Rights.

216.    Specifically defendant Ron Sill agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 14th Amendment Rights

217.    Specifically defendant Dan Sexton agreed to perjure himself in State Superior Court to prevent the plaintiff from further exercising his 14th Amendment Rights

218.    Specifically defendant Christine Robinson agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 14th Amendment Rights

219.    Specifically defendant Rizzitelli did perjure himself in State Superior Court to prevent the plaintiff from further exercising his 14th Amendment Rights

220.    The acts of the Derby defendants have resulted in the plaintiff being denied his 14th Amendment right of equal protection and has thus caused the plaintiff damages.

## COUNT EIGHT VIOLATION OF 15Th AMENDMENT RIGHT TO VOTE BY THE DERBY DEFENDANTS

221.    The plaintiff realleges all as set forth from 1-222 as if incorporated herein

222.    The plaintiffs 15th Amendment Right to vote has been denied and abridged by the named Derby defendants.

223.    Specifically, the Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the DTC have engaged in a public and private campaign to hinder and other wise stop the plaintiff from being a candidate and voting for himself.

224.    Specifically, the Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the DTC have engaged in a public and private campaign to hinder and other wise stop the plaintiff from fairly obtaining ballot access to vote for the candidate of his choice.

225.    Specifically, the Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the DTC have engaged in a public and private campaign to hinder and other wise stop the plaintiff from attending any Town Committee meetings and thus denying the plaintiff his right to vote and as such nominate the Democratic Candidate of his choice for Mayor of Derby Connecticut.

226.    Specifically defendant Rizzitelli did order all other defendants to not provide notice of DTC meeting thus denying the plaintiff access and a Right to vote.

227.    Specifically, defendant Watson in her capacity as third ward chair did purposely fail to provide notice of DTC meetings and events in an attempt to prevent the plaintiff from exercising his Right to vote.

228.    Specifically on April 21, 2009, defendant Christine Robinson did assault and threaten to kill the plaintiff with the intent and purpose of intimidating the plaintiff from assembling and pursuing his 15th Amendment Rights.

229.    Specifically defendant Parizo agreed to perjure herself in State Superior Court to prevent the plaintiff from further exercising his 15th Amendment Rights

230.  Specifically defendant James Watson agreed to perjure himself in State
      Superior Court to prevent the plaintiff from further exercising his 15th
      Amendment Rights.

231.  Specifically defendant Sandy Watson agreed to perjure herself in State
      Superior Court to prevent the plaintiff from further exercising his 15th
      Amendment Rights

232.  Specifically defendant John Orazietti agreed to perjure himself in State
      Superior Court to prevent the plaintiff from further exercising his 15th
      Amendment Rights

233.  Specifically defendant Ron Sill agreed to perjure himself in State Superior
      Court to prevent the plaintiff from further exercising his 15th Amendment
      Rights

234.  Specifically defendant Dan Sexton agreed to perjure himself in State
      Superior Court to prevent the plaintiff from further exercising his 15th
      Amendment Rights

235.  Specifically defendant Christine Robinson agreed to perjure herself in
      State Superior Court to prevent the plaintiff from further exercising his
      15th Amendment Rights

236.    Specifically defendant Rizzitelli did perjure himself in State Superior
        Court to prevent the plaintiff from further exercising his 15th Amendment
        Rights.

237.    The acts of the Derby defendants have resulted in the plaintiff being
        denied his 15th Amendment right to vote and has thus caused
        the plaintiff damages.

## COUNT NINE VIOLATION OF 42 U.S.C. §1983 BY THE DERBY DEFENDANTS

238.    The plaintiff realleges all as set forth from 1-239 as if incorporated herein

239.    The plaintiff alleges that the Derby defendants under color of law
        have caused the plaintiff to suffer a deprivation of rights, privileges, and
        immunities secured by the Constitution and laws of the United States and
        the State of Connecticut in violation of 42 U.S.C. §1983.

240.    Specifically the rights in question are those enumerated at amendments
        1, 9, 14 and 15 made applicable to the state and its political
        subdivisions through the 14th amendment to the United States
        Constitution.

241.    Specifically the Derby defendants through their conspiracy
        abridged and denied the plaintiffs right to freedom of speech, the right to
        assemble and the right to petition pursuant to the 1st amendment of the
        U.S. Constitution.

**242.**    Specifically the Derby defendants through their conspiracy
abridged and denied the plaintiffs right to privacy, expression, enjoyment
of his property, the right to freely exercise his right to pursue elected
office and the right to be left alone without harassment pursuant to the 9th
amendment of the U.S. Constitution.

**243.**    Specifically the Derby defendants through their conspiracy
abridged and denied the plaintiffs rights to privileges, immunities, liberty,
due process and equal protection of the laws made applicable to the state
and its political subdivisions including Derby through the 14th amendment
to the U.S. Constitution.

**244.**    Specifically the Derby defendants through their conspiracy
abridged and denied the plaintiffs right to vote based on his race
in violation of the 15th amendment to the United States Constitution.

**245.**    Specifically the Derby defendants through their conspiracy
acting under color of law have abridge the plaintiff rights of free speech,
redress through petition, due process and equal protection in violation of
42 U.S.C. §1983.

**246.**    Specifically the Derby defendants through their conspiracy
acting under color of law violated the plaintiffs Constitutional Rights
pursuant to the Connecticut Constitution at Section 1, Section 2, Section 4,
Section 5, Section 7, Section 14 and Section 20
violation of 42 U.S.C. §1985.

247.    These acts have resulted in the plaintiff being damaged as to his
constitutional rights in violation of 42 U.S.C. §1983.

## COUNT TEN VIOLATION OF 42 U.S.C. §1985 BY THE DERBY DEFENDANTS

248.    The plaintiff realleges all as set forth from 1-249 as if incorporated

249.    The Derby defendants have conspired directly and indirectly for the
purpose of depriving the plaintiff of equal privileges and immunities
under the laws of Connecticut and the United States.

250.    The Derby defendants have conspired directly and indirectly for the
purpose of preventing and hindering the constituted authorities of the
state of Connecticut and the city of Derby their
agents and assigns from giving or securing to the plaintiff protection of
the laws.

251.    The Derby defendants have conspired directly and indirectly for the
purpose of preventing by threat and intimidation the plaintiff who is
lawfully entitled to vote for the candidate of his choosing from having said
choice.

252.    The Derby defendants have conspired directly and indirectly for the
purpose of preventing by threat and intimidation the plaintiff
from giving his support or advocacy in a legal manner, toward or in
favor of the election of any lawfully qualified person including himself.

253.    Specifically the Derby defendants through their conspiracy
        abridged and denied the plaintiffs right to freedom of speech, the right to
        assemble and the right to petition pursuant to the 1st amendment of the
        U.S. Constitution.

254.    Specifically the Derby defendants through their conspiracy
        abridged and denied the plaintiffs right to privacy, expression, enjoyment
        of his property, the right to freely exercise his right to pursue elected
        office  and the right to be left alone without harassment pursuant to the 9th
        amendment of the U.S. Constitution.

255.    Specifically the Derby defendants through their conspiracy
        abridged and denied the plaintiffs rights to privileges, immunities, liberty,
        due process and equal protection of the laws made applicable to the state
        and its political subdivisions including Derby through the 14th amendment
        to the U.S. Constitution.

256.    Specifically the Derby defendants through their conspiracy
        abridged and denied the plaintiffs right to vote based on his race
        in violation of the 15th amendment to the United States Constitution.

257.    The plaintiff has been injured in his person and his property by the acts of
        the Derby defendants in violation of 42 U.S.C. §1985 (3).

258.    These acts have resulted in the plaintiff being damaged as to his constitutional rights in violation of 42 U.S.C. §1985 (3).

259.    Specifically the Derby defendants through their conspiracy acting under color of law violated the plaintiffs Constitutional Rights pursuant to the Connecticut Constitution at Section 1, Section 2, Section 4, Section 5, Section 7, Section 14 and Section 20 violation of 42 U.S.C. §1985 and 42 U.S.C. §1986.

260.    These acts have resulted in the plaintiff being damaged as to his constitutional rights in violation of 42 U.S.C. §1985.

## COUNT ELEVEN VIOLATION OF 42 U.S.C. §1986 BY THE DERBY DEFENDANTS

261.    The plaintiff realleges all as set forth from 1-262 as if incorporated herein

262.    The derby Defendants collectively and independently of each other knew of the conspiracy to injure, harm and deprive the plaintiff of his civil rights as set forth herein.

263.    Said conspiracy inter alia consisted of meeting, planning and discussing methods and ways to intimidate and harass the plaintiff into forgoing his run for mayor or any elected office on the city of Derby as a Democratic nominee.

264.    Said conspiracy inter alia consisted of threats of violence specifically from defendant Christine Robinson.

265.    Said conspiracy inter alia consisted of the agreement among the defendants to commit perjury in state court to harm the plaintiff financially, personally, professionally and politically.

266.    Said conspiracy inter alia consisted of threats of lawsuits and actual lawsuits filed by defendant Sam Rizzitelli to harm the plaintiff financially, personally, professionally and politically.

267.    Said conspiracy inter alia consisted of the agreement among the defendants to limit access to meetings, notices and all rights and privileges the plaintiff had to pursue elective office and his membership on the defendant Derby Democratic Town Committee.

268.    All of these acts were in the furtherance of a conspiracy directed and designed to the sole end of thwarting the plaintiff from pursuing voting for the candidates of his choice, seeking redress from the government, due process, free speech elective office and his membership on the defendant Derby Democratic Town Committee.

269.    At no time did any of the Derby defendants attempt or actually stop the planning, preparation or any part, element or action of the conspiracy or any act, plan or preparation in the furtherance of said conspiracy.

270.    The Derby defendants knew that their acts violated 42 U.S.C. §1986
        and none of them at any time attempted to or actually stopped the
        planning, preparation or any part element or action of the conspiracy or
        any act, plan or preparation in the furtherance of said conspiracy.

271.    These non actions are violations of 42 U.S.C. §1986 and said
        violations have damaged the plaintiff.

## COUNT TWELVE VIOLATION OF TITLE III OF THE CIVIL RIGHTS ACT OF 1964 PUB.L. 88-352, 78 STAT. 241 BY THE DERBY DEFENDANTS

272.    The plaintiff realleges all as set forth from 1-273  as if incorporated herein

273.    The Derby Defendants acting under color of law, independently
        and collectively have violated the plaintiffs rights pursuant to the
        Civil Rights Act of 1964 pub.l. 88-352, 78 stat. 241.

274.    Specifically, the Derby defendants have denied the plaintiff access through
        threats and intimidation to a place of public access where votes
        were taken on DTC issues and nominations.

275.    Specifically, the Derby defendants acting under color of law in their roles
        as elected Democratic officials, their agents and assigns and a
        unincorporated association responsible for the administrative and financial
        support of the Democratic party in the City of Derby, did deny the plaintiff
        access to public facilities on grounds of race.

276.    Said public facility is the Veterans Memorial Building, 1 Atwater Avenue,
        Derby, CT

277.    Said facility is rented monthly by the Derby defendants for the purpose of
        conducting DTC meetings and business.

278.    The plaintiff a member of the DTC has a legal right to attend said
        meetings and vote on DTC business including candidate nominations.

279.    The plaintiffs access has been repeatedly denied by the Derby defendants
        through threats and intimidation thus violating Title III of
        Civil Rights Act of 1964 pub.l. 88-352, 78 stat. 241.

280.    Said conspiracy inter alia consisted of meeting, planning and discussing
        methods and ways to intimidate and harass the plaintiff into forgoing his
        run for mayor or any elected office on the city of Derby as a Democratic
        nominee.

281.    Said conspiracy inter alia consisted of threats of violence specifically from
        defendant Christine Robinson.

282.    Said conspiracy inter alia consisted of the agreement among the
        defendants to commit perjury in state court to harm the plaintiff
        financially, personally, professionally and politically.

283.    Said conspiracy inter alia consisted of threats of lawsuits and actual lawsuits filed by defendant Sam Rizzitelli to harm the plaintiff financially, personally, professionally and politically.

284.    Said conspiracy inter alia consisted of the agreement among the defendants to limit access to meetings, notices and all rights and privileges the plaintiff had to pursue elective office and his membership on the defendant Derby Democratic Town Committee.

285.    All of these acts were in the furtherance of a conspiracy directed and designed to the sole end of thwarting the plaintiff from pursuing voting for the candidates of his choice, seeking redress from the government, due process, free speech elective office and his membership on the defendant Derby Democratic Town Committee.

286.    Said violations have damaged the plaintiff in violation of Title III of Civil Rights Act of 1964 pub.l. 88-352, 78 stat. 241.

### COUNT  THIRTEEN VIOLATION OF SECTION 2 OF THE NATIONAL VOTING RIGHTS ACT OF 1965 (42 U.S.C. § 1973–1973AA-6) BY THE DERBY DEFENDANTS

287.    The plaintiff realleges all as set forth from 1-288  as if incorporated herein

288.    The Derby Defendants acting under color of law, independently
and collectively have violated the plaintiffs rights pursuant to the National
Voting Rights Act of 1965 (42 U.S.C. § 1973–1973aa-6).

289.    Specifically, the Derby defendants have imposed on the plaintiff
a voting qualification or prerequisite to voting, that includes inter alia,
supporting defendant for any future elected office he may
seek and to provide to defendant employment if the
plaintiff were to be elected mayor of Derby.

290.    Said voting qualification has denied and abridged the plaintiff right to cote
and participate at DTC meetings in violation of Section 2 of the National
Voting Rights Act of 1965 (42 U.S.C. § 1973–1973aa-6).

291.    Said voting qualifications also included financial support for defendant
and other candidates even if the plaintiff did not support
said candidates.

292.    In exchange for DTC membership and support in his quest for the
        DTC nomination the plaintiff was pressured by the Derby defendants and
        other former members over a period of four years.

293.    The plaintiff the only African American to ever be a DTC member was
        treated differently in this regard than all other DTC members who are
        Caucasian.

294.    These acts have denied the plaintiff access to voting at DTC meetings and
        thus violated his rights pursuant to Section 2 of the National
        Voting Rights Act of 1965 (42 u.s.c. § 1973–1973aa-6).

295.    Said acts of the Derby defendants have damaged the plaintiff.

**PRAYER FOR RELIEF:**

Wherefore, plaintiff respectfully ask this court and jury to:

(1)    The Plaintiff seeks monetary damages of not less than Forty Million
       Dollars for the purposeful abridgement and denial of his civil and
       constitutional rights.

(2)    The plaintiff seeks punitive damages of Forty Million Dollars for the purposeful
       abridgement and denial of his civil and constitutional rights.

(3)    The plaintiff seeks any and all equitable relief deemed necessary and proper by
       the court and within its powers to grant.

(4)    The plaintiff seeks any reasonable verdict by a jury of his peers as to the
       facts to be decided in his favor.

(5)    The plaintiff seeks a total in monetary actual damages of **Eighty Million Dollars**
       **$80,000,000**

## CLAIM FOR JURY:

(1) The plaintiff hereby respectfully demands a trial by jury of all foregoing facts.

## CLAIM FOR EQUITABLE RELIEF:

(1) The plaintiff hereby respectfully request equitable relief where appropriate of

the foregoing issues of law.

**Dated this 15ᵀʰ Day of January 2010**

MEL THOMPSON, J.D.
58 MARSHALL LANE
DERBY, CT 06418
203-549-5686
mel@melthompsonjd.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served along with waivers of service,

by certified mail, or hand to the following:

Sam Rizzitelli
26  Prindle Avenue
Derby, CT 6418

Anita Dugatto-Coscia
69 Elizabeth ST,
Derby, CT 06418

Shelia Parizo
30 Laurel Avenue
Derby, CT 6418

Marc Garofalo
95 Academy Hill Rd
Derby, CT 6418

Christine Robinson
250 Hawthorne Ave
Derby, CT 6418

Ronald Sill
73 Grove Avenue
Derby, CT 6418

Joyce Sill
73 Grove Avenue
Derby, CT 6418

Paul Varsanik, Jr.
91 Park Avenue
Derby, CT 6418

Dan Sexton
41 McLaughlin Terr
Derby, CT 6418

John Orazietti
56 Sodom Lane
Derby, CT 6418

Derby Democratic Town Committee
26 Prindle Avenue
Derby, CT 6418

MEL THOMPSON, J.D.
58 MARSHALL LANE
DERBY, CT 06418
203-549-5686
mel@melthompsonjd.com