IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------x
                                                         :

MEL THOMPSON                    :          3:10 CV 0071 (JBA)
                                                         :

v.                                        :
                                                         :

SAM RIZZITELLI, ET AL.          :          DATE: JUNE 18, 2010
                                                         :
------------------------------------------------x

RULING ON PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY

On January 15, 2010, plaintiff, who is proceeding pro se,[1] initiated this action against defendants Sam Rizzitelli, Shelia Parizo, Sandy Watson, James Watson, Dan Sexton, Anita Duggatto, Christine Robinson, Ronald Sill, Joyce Sill, Paul Varsanik, Jr., John Orazietti, and the Derby Democratic Town Committee. (Dkt. #1).[2] In his complaint, plaintiff alleges that defendants have violated his constitutional and civil rights, including his rights under the First, Ninth, Fourteenth and Fifteenth Amendments, 42 U.S.C. §§ 1983, 1985(3), and 1986, and Section 2 of the National Voting Rights Act of 1965, 42 U.S.C. § 1973, in conspiring to deprive and depriving plaintiff of political access in the City of Derby.[3] (Id.). On March 9,

---

[1] Plaintiff is well educated and has had legal training. See, e.g., Thompson v. Am. Bar Ass'n, 05 CV 1493 (CFD), 2007 WL 987807, at *1 (D. Conn. Mar. 30, 2007)(plaintiff has a bachelor's degree and a master's degree in political science from Southern Connecticut State University and graduated with a law degree from an internet correspondence law school located in California).

[2] Defendant Dan Sexton is listed twice in the caption of plaintiff's complaint.

[3] Specifically, plaintiff alleges, inter alia, that defendants have conspired against plaintiff by threatening and intimidating plaintiff in his political activities; defendants have intimidated and harassed plaintiff into foregoing his run for any elected office; defendants deprived plaintiff of access to public facilities on grounds of race; defendants have imposed and applied voting qualification and prerequisites to voting standards, practices and procedures which resulted in a denial and abridgement of plaintiff's right to vote on account of his race or color; defendants have conspired to deny plaintiff's right to privacy; and defendants have conspired to deny plaintiff his right to vote on the basis of his race.

2010, plaintiff filed his Motion for Prejudgment Remedy against defendant Dan Sexton in the amount of $500,000, with affidavit and brief in support.[4] (Dkts. ##5-7). On March 22, 2010, the motion was referred by United States District Judge Janet Bond Arterton to this Magistrate Judge (Dkt. #8), and on June 14, 2010, a prejudgment remedy hearing was held (Dkt. #24; see also Dkt. #9), at which plaintiff testified. Defendant Sexton did not appear for the hearing.[5]

For the reasons stated below, plaintiff's Application for Prejudgment Remedy (Dkt. #5) is granted in part.

## I. DISCUSSION

### A. FACTUAL BACKGROUND

At the hearing held before this Magistrate Judge on June 14, 2010, plaintiff testified under oath that during plaintiff's prosecution of a "previous federal case" that involved the "same or similar issues,"[6] plaintiff, after a series of face-to-face communications, entered into a Settlement Agreement with defendant Sexton that includes admissions sufficient to establish that the named defendants in this case, including defendant Sexton, conspired to deny plaintiff political access in the City of Derby. As plaintiff testified, during the course of

---

[4]Attached as Exh. A to plaintiff's brief in support is a copy of a nine-page Settlement Agreement between Melvin Thompson and Dan Sexton in the matter of Thompson v. Rizzitelli, et al., Civ. No. 3:09 CV 1009 (VLB), signed December 3, 2009 ["Settlement Agreement"].

[5]On February 16, 2010, counsel filed an appearance for the Sill defendants and defendant Orazietti (Dkts. ##3-4), and on April 14, 2010, counsel appeared for defendants Duggato, Parizo, Rizzitelli, Robinson, Varsanik, Jr., and the Watson defendants. (Dkt. #11).

Defendant Sexton is the only defendant who has not appeared by counsel or pro se. Plaintiff testified that in addition to defendant Sexton receiving notice of the hearing, Attorney Sponheimer, who represents three defendants in this case, contacted defendant Sexton twice in the week preceding the hearing and advised him to appear.

[6]See note 4 supra.

his previous federal lawsuit, he had a "fortuitous meeting" with defendant Sexton when he bumped into him at the Derby Post Office, at which time Sexton told plaintiff that he was willing to discuss the federal case to the extent it involved him.  According to plaintiff, defendant Sexton, was an officer in the Derby Democratic Town Committee and the Campaign Chairman for the Democratic nominee for Mayor last year, and is now the First Ward Chairman and is still actively involved in Derby politics and in contact with other named defendants, and thus has "detailed knowledge" of how defendants acted to keep plaintiff out of the political forum.  Defendant Sexton offered to swear to admissions under oath and provide affidavits to plaintiff which plaintiff could use to further prosecute his earlier federal lawsuit and other state lawsuits.

Plaintiff testified that he spoke to defendant Sexton face-to-face and by telephone on a daily basis for about a week and a half, and during which time frame, plaintiff was providing drafts of a settlement agreement to Sexton for his review.  According to plaintiff, defendant Sexton would review the drafts and return them to plaintiff with corrections. Plaintiff's uncontroverted testimony also included that defendant Sexton's mother, with whom Sexton lives, also reviewed the drafts and advised defendant, in plaintiff's presence, to enter into this agreement as she too had "intimate knowledge" of the circumstances at issue. Plaintiff testified that on the day they signed the final Settlement Agreement , plaintiff drove defendant Sexton in plaintiff's car to Derby City Hall and when they arrived, defendant Sexton sat in plaintiff's car and read the Settlement Agreement in detail one last time.  The Settlement Agreement, signed on December 3, 2009, reads in relevant part:

> . . .That I Dan Sexton in my capacity as a member of the Derby Democratic Town Committee, First Ward Chairman, Candidate for the Board of Alderman and Campaign Manger to Daniel Foley[,] the Democratic nominee for Mayor of the city of Derby in 2009, did participate in, encourage, organize and assist

in said conspiracy on my own, as a member of the Derby Democratic Town Committee, First Ward Chairman, Candidate for the Board of Alderman and Campaign Manager to Daniel Foley . . . at the direction of Sam Rizzitelli[,] . . . Shelia Parizo[,] . . . [and] Anita Duggato.

. . . That I Dan Sexton did meet with and have personal knowledge that all of the named individuals and non corporate entities listed . . . above with the exception of Marc Garofalo regarding said conspiracy, how to execute said conspiracy and how to assure that said conspiracy would accomplish the goals of denying Thompson ballot access as a candidate for Mayor of the City of Derby and to destroy any further possibility that Thompson would ever be elected to any office by ruining his name, tarnishing his image and publicly portraying him as insane, unstable, corrupt, and extortionist and a criminal.

. . . That I Dan Sexton know for a fact due to Sam Rizzitelli himself telling me that Sam Rizzitelli did make a false complaint regarding Thompson including a false claim that Thompson tried to extort money from Rizzitelli in the furtherance of said conspiracy.

. . .

. . . That I Dan Sexton have been in the past threatened by Sam Rizzitelli, Shelia Parizo, Sandy Watson and Anita Duggato that I would be "kicked out" of politics if I ever worked with or co-operated with Mel Thompson.

. . . That I Dan Sexton have been promised by Sam Rizzitelli jobs at the Hartford Insurance Company and the City of Derby if I Dan Sexton worked with Rizzitelli in [working against] Mel Thompson.

. . . That I Dan Sexton have heard Sam Rizzitelli, Anita Duggato, Shelia Parizo and Sandy Watson refer to Mel Thompson as a "n***er" and a "nut".

. . . That I Dan Sexton was told by Same Rizzitelli that he did not wish to change the post about himself because he could use it to finally "get that n***er."

. . . That I Dan Sexton was told by Sam Rizzitelli that Thompson was the "dumbest n***er" he knew for trusting him (Rizzitelli) with the blog and believing that a "n***er" would ever get on a ballot in Derby.

. . . That I Dan Sexton believe that the conspiracy and actions of the named individuals and non corporate entities listed . . . [above] were racially motivated with the exception of Marc Garofalo who I believe was motivated by politics.

. . . That I Dan Sexton admit and believe that my actions and those of the

>named individuals and non corporate entities listed . . . [above] were violations of Thompson's civil rights. . . .

(Settlement Agreement, at 2-4, Dkt. #7, Exh. A;[7] see also Thompson v. Rizzitelli, No. 3:09 CV 1099(VLB)(Dkt. #40 Notice of Voluntary Dismissal as to defendant Dan Sexton, filed December 4, 2009).

According to plaintiff, defendant Sexton agreed that the statements made therein were correct,[8] and the two of them proceeded to City Hall to have the Settlement Agreement notarized. As plaintiff testified, when they entered City Hall, they went first to the Building Inspector's Office, who defendant Sexton has known since he was young, and the Inspector "encouraged" Sexton to tell the truth. According to plaintiff, after this conversation, defendant Sexton was "more comfortable" signing the agreement, and they proceeded to the Tax Collector's Office. After defendant Sexton produced identification to the Tax Collector, Cinda Buchter,[9] both parties agreed to the Notary's oath and signed the Settlement Agreement. Plaintiff then drove defendant Sexton to his job at St. Mary's-St. Michael's School.

Plaintiff testified that after the agreement was signed, defendant Rizzitelli "badgered" defendant Sexton to "renege" on the Settlement Agreement, and shortly thereafter, defendant Sexton did breach the agreement. According to plaintiff, he withdrew his earlier federal case against the other defendants because he thought that if he withdrew the case, it would show good faith on his part and the case could be resolved by some type of public

---

[7] Of the nine pages of this Settlement Agreement, pages 1, and 5-9 contain paragraphs typically found in standard settlement agreements.

[8] According to plaintiff, defendant Sexton signed other affidavits that day as well.

[9] Plaintiff testified that Ms. Buchter was a "disinterested third party."

5

apology. (See Thompson v. Rizzitelli, Civ. No. 3:09 CV 1099(VLB)(Dkt. #42, Notice of Voluntary Dismissal, filed December 14, 2009).

### B. LEGAL STANDARD FOR A PREJUDGMENT REMEDY

A prejudgment remedy "is generally intended to secure the satisfaction of a judgment should plaintiff prevail." Cendant Corp. v. Shelton, No. 3:06 CV 854 (JCH), 2007 WL 1245310, at *2 (D. Conn. Apr. 30, 2007)(citation omitted). Federal Rule of Civil Procedure 64 permits a plaintiff to utilize the state prejudgment remedies available to secure a judgment that might ultimately be rendered in an action. See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County, 415 U.S. 423, 436 n. 10 (1974). Pursuant to the Connecticut Prejudgment Remedy statute, CONN. GEN. STAT. § 52-278d(a), the standard for issuing a prejudgment remedy is probable cause, so that a prejudgment remedy is appropriate

> [i]f the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, finds that the [movant] has shown probable cause that such a judgment will be rendered in the matter in the [movant's] favor in the amount of the prejudgment remedy sought . . . .

CONN. GEN STAT. § 52-278d(a). In the words of now Chief United States District Judge Alvin W. Thompson:

> The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. Probable cause is a flexible common sense standard. It does not demand that a belief e correct or more likely true than false.

Qualitative Reasoning Sys., Inc. v. Computer Scis. Corp., No. 3:98 CV 554 (AWT), 2000 WL 852127, at *10 (D. Conn. Mar. 31, 2000)(internal quotations & multiple citations omitted).

A prejudgment remedy proceeding is "only concerned with whether and to what

extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action." Benton v. Simpson, 78 Conn. App. 746, 751-52, 829 A.2d 68, 72-73 (App. Ct. 2003)(citation & internal quotations omitted). Further, while a prejudgment remedy hearing "is not contemplated to be a full scale trial on the merits of plaintiff's claims," Bank of Boston Conn. v. Schlessinger, 220 Conn. 152, 156 (1991)(multiple citations & internal quotations omitted), a plaintiff is "bound to furnish proof of his damage with reasonable probability, and not leave the trial court to speculation and conjecture." Mullai v. Mullai, 1 Conn. App. 93, 95, 468 A.2d 1240, 1242 (App. Ct. 1983)(per curiam).   After a hearing, the Court must "consider not only the validity of the plaintiff's claim but also the amount that is being sought." Calfee v. Usman, 224 Conn. 29, 38 (1992)(citation & internal quotations omitted).

### C. PROBABLE CAUSE

The standard of "probable cause" is less demanding than the "preponderance of the evidence" or the "likelihood of success" standards. Cendant Corp., 2007 WL 1245310 at *3. Given the admissions in the Settlement Agreement regarding defendant Sexton's involvement in a conspiracy to deprive plaintiff ballot access and to deprive plaintiff his constitutional, statutory and civil rights as outlined in his complaint, the fact that contents of this Settlement Agreement have not been disputed,[10] the fact that plaintiff's testimony was uncontroverted, and the low probable cause standard that applies to PJR applications, plaintiff has established that probable cause exists to secure a prejudgment remedy.

### D. DAMAGES

Plaintiff seeks a prejudgment remedy in the amount of $500,000.  (Dkt. #5, at 2, ¶

---

[10]See note 5 supra.

6). Plaintiff gave no testimony regarding his damages. Although the damages that plaintiff claims "need not be established with precision but only on the basis of evidence yielding a fair and reasonable estimate," Savalle v. Kobyluck, No. 3:00 CV 675 (WWE), 2001 WL 1913746, at *2 (D. Conn. Sept. 21, 2001)(citations & internal quotations omitted), plaintiff has not established that $500,000 is a fair and reasonable estimate of damages in this case. Further, plaintiff has not "furnish[ed] proof of his damage with reasonable probability." Mullai v. Mullai, 468 A.2d at 1242. While plaintiff need not establish that the amount of damages with "mathematical precision," Rafferty v. Noto Bros. Construction, LLC, 68 Conn. App. 685, 693, 795 A.2d 1274 (2002)(citation omitted), there must exist some evidence sufficient for the court to make a "fair and reasonable" prediction as to likely damages. Kendall v. Amster, 108 Conn. App. 319, 331, 948 A.2d 1041 (2008)(citation & internal quotations omitted). Thus, while probable cause exists for the entry of a prejudgment remedy, the amount of such remedy is reduced to $42,000, which represents 1/12 of the $500,000 requested, as defendant Sexton is only one out of twelve defendants named in the complaint.[11] The prejudgment remedy amount ordered here is subject to modification, if appropriate, at a later date.[12]

## II. CONCLUSION

For the reasons stated above, plaintiff's Application for Prejudgment Remedy (Dkt.

---

[11] At the hearing, plaintiff testified that defendant Sexton does not own any real property, and his only assets are personal bank accounts. Section 52-278d permits an applicant to seek either an attachment of sufficient property or a garnishment to secure a specified sum and authorizes the court to order such attachment only as is necessary to secure that sum.

[12] Under CONN. GEN. STAT. § 52-278k, "[t]he court may . . . modify the prejudgment remedy requested as may be warranted by the circumstances. The court may, upon motion and after hearing, at any time modify or vacate any prejudgment remedy granted or issued under this chapter upon the presentation of evidence which would have justified such court in modifying or denying such prejudgment remedy . . . ."

8

#5) is <u>granted in part in the amount of $42,000</u>.

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Small v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit)**.

Dated at New Haven, Connecticut, this 18th day of June, 2010.

                                                     /s/ Joan G. Margolis, USMJ
                                                     Joan Glazer Margolis
                                                     United States Magistrate Judge