**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

-----------------------------------------------------------------x

**MEL THOMPSON**

                                                 CASE NO.3:10 CV 00071 (JBA)

**Plaintiff**

**-against-**

**SAM RIZZITELLI, ET AL**

-----------------------------------------------------------------x

**Defendants**

**AMENDED COMPLAINT**

**Plaintiff Pro Se as and for his complaint against defendants, allege as follows:**

**JURISDICTION AND VENUE**

**1.** The Court has jurisdiction of the subject matter of this action pursuant to Amendments I, IX, XIV §1 and XV of the United States Constitution, 42 U.S.C. §1983, 42 U.S.C. §1985, 42 U.S.C. §1986, and the National Voting Rights Act of 1965 (42 U.S.C. § 1973–1973aa-6)

**2.** The district court has venue jurisdiction pursuant to law as the acts complained of occurred, in substantial part, in the district of Connecticut, and the primary place of business of the primary defendant(s) is located in the district of Connecticut, codified at 28 U.S.C. § 1391(b).

**3.**   At all times the defendants acted under color of law pursuant to CGS Sec. 9-390

and while acting under color of law said defendants did violate and abridge the

federal Civil, Statutory and Constitutional rights as set forth herein at length.

## SUMMARY OF FEDERAL CLAIMS:

**4.**   The plaintiff brings this action inter alia to vindicate his Constitutional and Civil

rights pursuant to the U.S. Constitution and all federal statues

enumerated and applicable to the claims of the plaintiff stated herein.

**5.**   The plaintiff alleges that his 1st Amendment right to free speech has

been abridged and denied by defendants  Sam Rizzitelli, Shelia Parizo, Sandy

Watson, James Watson, Paul Varsanik, Jr., Anita Duggatto,

Ronald Sill, Joyce Sill, Dan Sexton, John Orazietti, Christine Robinson and the

Derby Democratic Town Committee, (herein after known collectively as the

Derby Defendants) acting under color of law.

**6.**   The plaintiff alleges that his 1st Amendment right to petition for redress

has been abridged and denied by the Derby defendants acting under color of law.

**7.**   The plaintiff alleges that his 1st Amendment right to Assembly

has been abridged and denied by the Derby defendants acting under color of law.

**8.**   The plaintiff alleges that his 1st Amendment right to Association

has been abridged and denied by the Derby defendants acting under color of law.

**9.** The plaintiff alleges that his 14th Amendment right to due process

has been abridged and denied by the Derby defendants acting under color of law.

**10.** The plaintiff alleges that his 14th Amendment right to equal protection has been

abridged and denied by the Derby defendants acting under color of law.

**11.** The plaintiff alleges that his 15th Amendment right to vote

has been abridged and denied by the acts of the Derby defendants acting under

color of law.

**12.** The plaintiff alleges that the Derby defendants acting under color of law,

have caused the plaintiff to suffer a deprivation of rights, privileges, and

immunities secured by the Constitution and laws of the United States in violation

of 42 U.S.C. §1983 (3).

**13.** The plaintiff alleges that the Derby defendants acting under color of law

have conspired against the plaintiff for the purpose of depriving, directly and

indirectly through threats,  intimidation and illegal acts the constitutional and civil

rights of the plaintiff  and said acts have hindered the plaintiff from securing equal

protection of the laws, the right to vote and the right to support or advocate a

position  in violation of 42 U.S.C. §1985 (3).

**14.** The plaintiff alleges that the Derby defendants acting under color of law

have conspired against the plaintiff for the purpose of depriving, directly and

indirectly through threats,  intimidation and illegal acts the constitutional and

civil rights of the plaintiff  and said acts have hindered the plaintiff from

exercising his Constitutional and civil rights pursuant to Amendments I, IX, XIV

§1 and XV of the United States Constitution,42 U.S.C. §1983, 42 U.S.C. §1986,

and the  National Voting Rights Act of 1965 (42 U.S.C. § 1973–1973aa-6) in

violation of 42 U.S.C. §1985 (3).

**15.** The plaintiff alleges that the Derby defendants acting under color of law

have conspired against the plaintiff and said conspiracy has damaged the plaintiff

in his person and property and resulted in the plaintiff being denied rights,

privileges and immunities secured to the plaintiff by the Constitution of the

United States, and the laws of the United States and in violation of 42 U.S.C.

§1985 (3)

**16.** The plaintiff alleges that the Derby defendants acting under color of law

knew of and refused to prevent any and all of the wrongs conspired to be done,

and alleged herein against the plaintiff in violation of 42 U.S.C. §1986.

**17.**  The plaintiff alleges that the Derby defendants acting under color of law

have imposed and applied voting qualification and prerequisites to voting,

standards, practices, and  procedures in a manner which resulted in a denial and

abridgement the right of the plaintiff to vote on account of race or color in

violation of the National Voting Rights Act of 1965 (42 U.S.C. § 1973–1973aa-6)

## PARTIES:

**18.** MEL THOMPSON

The Plaintiff is a registered Democratic elector in the City of Derby and a former Democratic candidate for Mayor of Derby 2009

**19.** SAM RIZZITELLI

Is the past and present Chairman of the Derby Democratic Party, an unincorporated  Political Association and quasi government entity that is an elected body responsible for the organization and operational support of Democratic candidates in the city of Derby CT

**20.** SHELIA PARIZO

Is the past 1st  Ward Chairwoman of the Derby Democratic Party, an unincorporated  Political Association and quasi government entity that is an elected body responsible for the organization and operational support of Democratic candidates in the city of Derby CT

**21.** DAN SEXTON

Is the past 2nd Ward chairman and member of the Derby Democratic Town Committee, an unincorporated  Political Association and quasi government entity that is an elected body responsible for the organization and operational support of Democratic candidates in the city of Derby CT

**22.** SANDY WATSON

Is the current 3rd Ward Chairwoman of the Derby Democratic Party, an unincorporated  Political Association and quasi government entity that is an elected body responsible for the organization and operational support of Democratic candidates in the city of Derby CT

**23.** JAMES WATSON

Is a resident of the city of Derby, State of Connecticut and the spouse to defendant Sandy Watson.

**24.** ANITA DUGGATTO

Is the current Treasurer and former Chairwoman of the Derby Democratic Party, an unincorporated  Political Association and quasi government entity that is an elected body responsible for the organization and operational support of Democratic candidates in the city of Derby CT

**25.** RONALD SILL

Is a member of the Derby Democratic Town Committee, an unincorporated Political Association and quasi government entity that is an elected body responsible for the organization and operational support of Democratic candidates in the city of Derby CT

**26.** JOYCE SILL

Is a resident of the City of Derby active in Derby politics and known to all of the other defendants.

**27.** PAUL VARSANIK, JR.

Is a member of the Derby Democratic Town Committee, an unincorporated Political Association and quasi government entity that is an elected body responsible for the organization and operational support of Democratic candidates in the city of Derby CT

**28.** JOHN ORAZIETTI

Is a member of the Derby Democratic Town Committee, an unincorporated Political Association and quasi government entity that is an elected body responsible for the organization and operational support of Democratic candidates in the city of Derby CT

**29.** CHRISTINE ROBINSON

Is a member of the Derby Democratic Town Committee, an unincorporated Political Association and quasi government entity that is an elected body responsible for the organization and operational support of Democratic candidates in the city of Derby CT

**30.** DERBY DEMOCRATIC TOWN COMMITTEE

Is an unincorporated  Political Association and quasi government entity that is an elected body responsible for the organization and operational support of Democratic candidates in the city of Derby CT

## FEDERAL CLAIMS FACTS:

**31.** Over a period of about five years the plaintiff has had a personal, political and professional relationship with defendant Sam Rizzitelli (hereinafter known as Rizzitelli)

**32.** Over a period of about four years the plaintiff has had a political relationship with defendant Shelia Parizo (hereinafter known as Parizo)

**33.** Over a period of about four years the plaintiff has had a political relationship with defendant Sandy Watson (hereinafter known as S.Watson)

**34.** Over a period of about four years the plaintiff has had a political relationship with defendant James Watson (hereinafter known as J. Watson)

**35.** Over a period of about four years the plaintiff has had a political relationship with defendant Anita Duggatto (hereinafter known as Duggatto)

**36.** Over a period of about 25 years the plaintiff has either known or had a political and personal relationship with defendant Christine Robinson and or her husband James (hereinafter known as Robinson)

**37.** Over a period of about 35 years the plaintiff has either known or had a political and personal relationship with defendant Ronald Sill (hereinafter known as R. Sill)

**38.** Over a period of about 35 years the plaintiff has either known or had a political and personal relationship with defendant Joyce Sill(hereinafter known as J. Sill)

**39.** Over a period of about 25 years the plaintiff has either known or had a political and personal relationship with defendant Paul Varsanik, Jr. (hereinafter known as Varsanik)

**40.** Over a period of about 2 years the plaintiff has either known or had a political and personal relationship with defendant Dan Sexton(hereinafter known as Sexton)

**41.** Over a period of about 25 years the plaintiff has either known or had a political and personal relationship with defendant John Orazietti (hereinafter known as Orazietti)

**42.** Over a period of about 35 years the plaintiff has either volunteered, attended meetings or worked on behalf of defendant Derby Democratic Party (hereinafter known as DTC).

**43.** Over a period of five years the plaintiff has performed legal research work for and worked with defendant Rizzitelli on numerous political projects.

**44.** At some point in the relationship in December 2008 the plaintiff raised the prospect that he would run for mayor to which defendant Rizzitelli replied "your crazy a black candidate is not going to get the town committee support".

**45.** As the plaintiff kept pressing this as an option defendant Rizzitelli began earnest discussions with the plaintiff regarding obtaining the endorsement of the Democratic Town Committee yet all along defendant Rizzitelli insisted that the plaintiffs race would be a factor in a "small town" like Derby.

**46.** Among the issues and demands raised and made by defendant Rizzitelli in return for his help getting the Democratic Town Committee to support the plaintiff was that he (Rizzitelli) be named Corporation Counsel for the City of Derby and that former Mayor Marc Garofalo be named to be the Mayors "Chief Administrative Assistant", a position currently held by Republican Phil Robertson and a position created by Garofalo.

**47.** The plaintiff had been told more than once by defendant Rizzitelli that he (the plaintiff) was "expected to give Marc Garofalo "Phil Robertson's job" if the plaintiff were elected and without such a commitment he (the plaintiff) would "never be on the ballot" and "for a black candidate to even have a chance to get the town committee support you need me and Marc and that has a price" stated Rizzitelli.

**48.** The plaintiff refused numerous times to make such promises and specifically told defendant Rizzitelli no more than once and felt that race would not be a factor with the voters if the Town Committee were to endorse the plaintiff, without said endorsement the plaintiff felt that many factors including possibly race could be an issue in a primary.

**49.** Notwithstanding this disagreement the relationship between defendant Rizzitelli and the defendant on the surface appeared to be cordial yet unbeknown to the plaintiff, defendant Rizzitelli had already begun to organize to prevent the plaintiff from participating in the endorsement process.

**50.** Rizzitelli was contacted and told by numerous committee members that the plaintiff was seeking their support for the Democratic nomination and that in fact many of these individuals were willing to give such support specifically those not politically aligned with either defendant Rizzitelli or Marc Garofalo.

**51.** The plaintiff filed the necessary paper work to be come a candidate for mayor and began to organize, send direct mail and maintain a campaign website in order to convince a majority of Town Committee members that the plaintiff was viable as a candidate and that race should not be a concern and would not be one if they endorsed the plaintiff.

**52.** According to defendant Anita Duggatto who had numerous conversations with the plaintiff regarding obtaining the nomination "Sam was in a panic" that the plaintiff could possibly obtain he party endorsement.

**53.** According to defendant Anita Duggatto efforts were begun in February of 2009 to "get a candidate" that would make defendant Rizzitelli "City Counsel" and "give Marc Phil's job".

**54.** Defendant Rizzitelli continued to speak with the plaintiff by phone and continued to try to get him to agree to the aforementioned job demands including a demand that  the plaintiff make these promises of  appointments in the presence of "certain Democrats" at the home of Shelia Parizo (defendant Parizo) to assure that the plaintiff could not back out on them if he were elected.

**55.** The plaintiff continued his campaign and continued to refuse to make any deals with defendant Rizzitelli.

**56.** Defendant Duggatto on a business trip to Boston called the plaintiff in the late winter of 2008/2009 telling him that she had brokered a deal with former State Representative Vin Tonucci to run for mayor and that she and the party wanted the plaintiff to run for Third Ward Alderman.

**57.** The plaintiff was specifically told by defendant Duggatto in this conversation that "Vin will do what Sam wants so your off the hook".

**58.** The plaintiff still refused to leave the race for mayor and even contacted Mr. Tonucci who denied that he promised jobs to anyone and had in fact been contacted but was not inclined to run because his "wife was against it".

**59.** The plaintiff contacted defendant Duggatto and informed her of this conversation to which she replied "Melvin your done, your not going to get on any ballot".

**60.** All Derby defendants from February through April of 2009 had unpublicized and unauthorized Town Committee meetings under color of law at defendant Parizo's home and other locations excluding the plaintiff with the intent to block the plaintiff from fairly competing for the Democratic nomination.

**61.** All Derby defendants attended these unpublicized and unauthorized Town Committee meetings under color of law excluding the plaintiff and any other Town Committee member or registered Democrat from participating.

**62.** Said meetings were for the sole purpose of denying the plaintiff ballot access as a candidate for Mayor of Derby by preventing him from actively participating in the nominating process and thus not participating in the endorsement process of the defendant Derby Democratic Town Committee.

**63.** Based on a statements made by defendant Dan Sexton, an officer of the defendant Democratic Town committee (herein after DTC), there was in fact a conspiracy involving all named defendants to deny the plaintiff the ability to access DTC members, attend meetings and campaign for the party endorsement.

**64.** Based on a statements made by defendant Dan Sexton, an officer of the defendant DTC all named defendants acting as DTC members or agents of the DTC under color of law conspired to deny the plaintiff the ability to access DTC members, attend meetings and campaign for the party endorsement, based on his race and his refusal to engage in a quid pro quo as to appointments if elected.

**65.** Based on a statements made by defendant Dan Sexton, an officer of the defendant DTC all named defendants acting as DTC members or agents of the DTC under color of law did refer to the plaintiff as a "nigger" and also as a "nut".

**66.** The plaintiff was told not to publish or speak about politics by defendants Sam Rizzitelli, Anita Duggatto, Christine Robinson and Sandy Watson as a DTC member and or agents of the DTC under color of law.

**67.** Based on statements made by defendant Dan Sexton, an officer of the defendant DTC to the plaintiff, defendant Joyce Sill was tasked by defendant Rizzitelli with "warning" employees who specifically worked with her in Derby City Hall that the plaintiff was a "black man with a chip on his shoulder" and that "he is going to fire all of us and hire only blacks to work for the city".

**68.** Based on statements made by defendant Dan Sexton, an officer of the defendant DTC to the plaintiff, defendants Shelia Parizo and Dan Sexton were tasked by defendant Rizzitelli with making sure that the First Ward Town Committee members would never "vote for a nigger as the nominee".

**69.** Based on statements made by defendant Dan Sexton, an officer of the defendant DTC to the plaintiff, defendants Ron Sill, Paul Varsanik and John Orazietti were tasked by defendant Rizzitelli with making sure that the Second Ward Town Committee members would never "vote for a nigger as the nominee".

**70.** Based on statements made by defendant Dan Sexton, an officer of the defendant DTC to the plaintiff, defendants Sandy and James Watson  were tasked by defendant Rizzitelli with making sure that the Third Ward Town Committee members would never "vote for a nigger as the nominee".

**71.** The plaintiff was not allowed to speak at DTC meetings and was threatened with lawsuits and jail by defendants Sam Rizzitelli, Anita Duggatto,as a DTC member and or agents of the DTC under color of law if he (the plaintiff) came to any DTC meeting uninvited and spoke on any political topic without first getting permission from them.

**72.** The plaintiff was threatened with "death" by defendant Christine Robinson and was assaulted by her acting as a DTC member and or agent of the DTC under color of law during an official DTC event on April 21st 2009.

**73.** Based on statements made by defendant Dan Sexton, an officer of the defendant DTC to the plaintiff, defendant Rizzitelli organized, developed said conspiracy under color of law as the Chairman and as a member of the DTC.

**74.** Based on statements made by defendant Dan Sexton, an officer of the defendant DTC to the plaintiff, each and every defendant named herein knew their role, and knew they were acting as members of the DTC and or authorized agents thereof under color of law.

**75.** Based on a statements made by defendant Dan Sexton, an officer of the defendant DTC to the plaintiff, each and every defendant named herein knew that their actions were designed to deny the plaintiff his civil, statutory and constitutional rights yet they engaged in these actions willingly.

**76.** Said meetings, conversations and actions by each and every defendant named herein sole aim was to deny the plaintiff ballot access as the endorsed candidate for Mayor of Derby via the DTC nominating process and thus abridge and deny the plaintiffs his Constitutional and Civil Rights to pursue elected office as the endorsed Democratic nominee.

**77.** Said meetings, conversations and actions by each and every defendant named herein were conducted under color of law by the named defendants acting and meeting as members and or officials and authorized agents of defendant DTC.

**78.** The result of the meetings, conversations and actions by each and every defendant named herein were conducted under color of law by the named defendants acting and meeting as members and or officials and authorized agents of defendant DTC, was to deny the plaintiff access to the nominating process of the Democratic party.

**79.** The result of the meetings, conversations and actions by each and every defendant named herein were conducted under color of law by the named defendants acting and meeting as members and or officials and authorized agents of defendant DTC, was to deny the plaintiff access to meetings held and conducted under color of law based on the plaintiffs race.

**80.** At all times said meetings, conversations and actions by each and every defendant named herein were conducted under color of law by the named defendants acting and meeting as members and or officials and authorized agents of defendant DTC pursuant to CGS Sec. 9-390.

**81.** All named defendants are state actors and or authorized agents of state actors pursuant to CGS Sec. 9-390.

## FEDERAL CLAIMS FOR RELIEF

## COUNT ONE VIOLATION OF 1ST AMENDMENT RIGHT TO FREE SPEECH BY THE DERBY DEFENDANTS

**82.** The plaintiff realleges all as set forth from 1-83 as if incorporated herein

**83.** The plaintiff sought the Democratic Party endorsement for Mayor of the City of Derby and to that end his only option was to speak to, associate with and campaign among the 45 members of the Derby Democratic Town Committee.

**84.** At all times it was the plaintiffs intent to earn the Party endorsement from the only legal entity under color of state law pursuant to CGS Sec. 9-390 that could have provided such an endorsement, however the plaintiff was denied access to this state approved committee by the named defendants.

**85.** Said denial included but was not limited to hindering and preventing the plaintiff from speaking and communicating to the Derby Democratic Town Committee through threats, intimidation and not providing legal notice of their meetings as proscribed by law set forth at CGS Sec. 9-390.

**86.** The Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the Derby Democratic Town Committee and or agents thereof (hereinafter known as DTC) did prevent and otherwise hinder the plaintiff from speaking freely at Democratic Town Committee meetings.

87. Specifically the plaintiff was harassed, yelled at, threatened and other wise intimidated and even ordered not to speak although this was his right as a member of the Democratic Town Committee, as a candidate, a registered Democrat and a citizen.

88. Specifically the plaintiff was told not to speak on political matters and was threatened with "serious consequences" including but not limited to, law suits and arrest by defendants Rizzitelli and Duggatto if he continued to exercise his right to free speech at said meetings.

89. Specifically the plaintiff was told by the Derby defendants separately and collectively to not discus political issues at said meetings.

90. The plaintiff was threatened separately and individually by the Derby defendants that he would be denied access to speak to Democratic Town Committee members at meetings if he did not promise in the presences of witnesses that he would appoint defendant Sam Rizzitelli Corporation Counsel of the City of Derby.

91. The plaintiff was threatened separately and individually by the Derby defendants that he would be denied access to speak to Democratic Town Committee members at meetings if he did not promise in the presences of witnesses that he would appoint former Mayor Marc Garofalo to Chief Administrative Assistant to the Mayor of the City of Derby.

**92.** The plaintiff refused to appoint either defendant Sam Rizzitelli or Marc Garofalo and was intimidated through threats specifically by defendant Christine Robinson who shouted the plaintiff down and refused to allow the plaintiff to speak at a DTC meeting on March 25th 2009.

**93.** The plaintiff refused to appoint either defendant Sam Rizzitelli or Marc Garofalo and was intimidated through threats specifically by defendant Christine Robinson who assaulted the plaintiff and stated to the plaintiff on April 21st 2009, "I'm going to kill you".

**94.** At all times the named defendants harassed and worked to intimidate the plaintiff in to not attending DTC meetings and or speaking at them, through a pattern of threats made by phone, face to face and through a public campaign directed at embarrassing the plaintiff into not speaking publicly about politics.

**95.** At all times the named defendants acted in concert, conspired and worked in the furtherance of said conspiracy through meetings in individual homes including but not limited to the home of defendant Shelia Parizo.

**96.** At all times after April 21st 2009 the named defendants failed to notify the plaintiff of DTC meetings and other DTC sponsored events held pursuant to their power as members, officers and agents of the Derby Democratic Town Committee (DTC) pursuant to CGS Sec. 9-390

**97.** By the admission of Defendant Dan Sexton the plaintiffs race and his refusal to appoint either defendant Sam Rizzitelli or Marc Garofalo were the driving and deciding factors for the actions of the named defendants.

**98.** At all times the named defendants acted in concert, conspired and worked in the furtherance of said conspiracy with the intent to deny the plaintiff his first amendment rights based on his race and his refusal to engage in a political quid pro quo.

**99.** At all times the defendants acted under color of law pursuant to CGS Sec. 9-390 and while acting under color of law said defendants did specifically conspire and work to violate the plaintiffs 1st Amendment Rights.

**100.** The acts of the defendants have resulted in the plaintiff being denied his 1st Amendment right to free speech and has thus caused the plaintiff damages.

**COUNT TWO VIOLATION OF 1ST AMENDMENT RIGHT TO PETITION FOR REDRESS BY THE DERBY DEFENDANTS**

101.     The plaintiff realleges all as set forth from 1-102 as if incorporated herein.

102.     The plaintiff sought the Democratic Party endorsement for Mayor of the City of Derby and to that end his only option was to speak to, associate with and campaign among the 45 members of the Derby Democratic Town Committee.

103.     At all times it was the plaintiffs intent to earn the Party endorsement from the only legal entity under color of state law pursuant to CGS Sec. 9-390 that could have provided such an endorsement, however the plaintiff was denied access to this state approved committee by the named defendants.

104.     Said denial included but was not limited to hindering and preventing the plaintiff from speaking and communicating to the Derby Democratic Town Committee through threats, intimidation and not providing legal notice of their meetings as proscribed by law as set forth at CGS Sec. 9-390.

105.     Specifically, the Derby defendants did deny the plaintiff an opportunity to fairly compete for elective office and engage in activities such as public speaking at town committee meetings through threats and intimidation.

106.    Specifically the plaintiff was harassed, yelled at, threatened and other wise intimidated and even ordered not to speak although this was his right as a member of the Democratic Town Committee, as a candidate, a registered Democrat and a citizen.

107.    Specifically the plaintiff was told not to speak on political matters and was threatened with "serious consequences" including but not limited to, law suits and arrest by defendants Rizzitelli  and Duggatto if he continued to exercise his right to free speech at said meetings.

108.    Specifically the plaintiff was told by the Derby defendants separately and collectively to not discus political issues at said meetings.

109.    The plaintiff was threatened separately and individually by the Derby defendants that he would be denied access to speak to Democratic Town Committee members at meetings if he did not promise in the presences of witnesses that he would appoint defendant Sam Rizzitelli Corporation Counsel of the City of Derby.

110.    The plaintiff was threatened separately and individually by the Derby defendants that he would be denied access to speak to Democratic Town Committee members at meetings if he did not promise in the presences of witnesses that he would appoint former Mayor Marc Garofalo to Chief Administrative Assistant to the Mayor of the City of Derby.

111.     The plaintiff refused to appoint either defendant Sam Rizzitelli or Marc

Garofalo and was intimidated through threats specifically by defendant

Christine Robinson who shouted the plaintiff down and refused to allow

the plaintiff to speak at a DTC meeting on March 25th 2009.

112.     The plaintiff refused to appoint either defendant Sam Rizzitelli or Marc

Garofalo and was intimidated through threats specifically by defendant

Christine Robinson who assaulted the plaintiff and stated to the plaintiff

on April 21st 2009, "I'm going to kill you".

113.      At all times the named defendants harassed and worked to intimidate the

plaintiff in to not attending DTC meetings and or speaking at them,

through a pattern of threats made by phone, face to face and through a

public campaign directed at embarrassing the plaintiff into not speaking

publicly about politics.

114.     At all times the named defendants acted in concert, conspired and worked

in the furtherance of said conspiracy through meetings in individual homes

including but not limited to the home of defendant Shelia Parizo.

115.     At all times after April 21st 2009 the named defendants failed to notify the

plaintiff of DTC meetings and other DTC sponsored events held pursuant

to their power as members, officers and agents of the Derby Democratic

Town Committee (DTC) pursuant to CGS Sec. 9-390

**116.**     By the admission of Defendant Dan Sexton the plaintiffs race and his refusal to appoint either defendant Sam Rizzitelli or Marc Garofalo were the driving and deciding factors for the actions of the named defendants.

**117.**     At all times the named defendants acted in concert, conspired and worked in the furtherance of said conspiracy with the intent to deny the plaintiff his first amendment rights based on his race and his refusal to engage in a political quid pro quo.

**118.**     At all times the defendants acted under color of law pursuant to CGS Sec. 9-390 and while acting under color of law said defendants did specifically conspire and work to violate the plaintiffs 1st Amendment Rights.

**119.**     The acts of the Derby defendants have resulted in the plaintiff being denied his 1st Amendment right to petition for redress and has thus caused the plaintiff damages.

## COUNT THREE VIOLATION OF 1ST AMENDMENT RIGHT TO ASSEMBLY BY THE DERBY DEFENDANTS

120.    The plaintiff realleges all as set forth from 1-121  as if incorporated herein

121.    The Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the DTC did prevent and other wise hinder the plaintiff from exercising his right of Assembly pursuant to the 1st Amendment of the U.S. Constitution.

122.    Specifically the plaintiff was harassed, yelled at, threatened and other wise intimidated and even ordered not to speak although this was his right as a member of the Democratic Town Committee, as a candidate, a registered Democrat and a citizen.

123.    Specifically the plaintiff was told not to speak on political matters and was threatened with "serious consequences" including but not limited to, law suits and arrest by defendants Rizzitelli and Duggatto if he continued to exercise his right to free speech at said meetings.

124.    Specifically the plaintiff was told by the Derby defendants separately and collectively to not discus political issues at said meetings.

125.     The plaintiff was threatened separately and individually by the
Derby defendants that he would be denied access to speak to Democratic
Town Committee members at meetings if he did not promise in the
presences of witnesses that he would appoint defendant Sam Rizzitelli
Corporation Counsel of the City of Derby.

126.     The plaintiff was threatened separately and individually by the
Derby defendants that he would be denied access to speak to Democratic
Town Committee members at meetings if he did not promise in the
presences of witnesses that he would appoint former Mayor Marc
Garofalo to Chief Administrative Assistant to the Mayor of the City of
Derby.

127.     The plaintiff refused to appoint either defendant Sam Rizzitelli or Marc
Garofalo and was intimidated through threats specifically by defendant
Christine Robinson who shouted the plaintiff down and refused to allow
the plaintiff to speak at a DTC meeting on March 25th 2009.

128.     The plaintiff refused to appoint either defendant Sam Rizzitelli or Marc
Garofalo and was intimidated through threats specifically by defendant
Christine Robinson who assaulted the plaintiff and stated to the plaintiff
on April 21st 2009, "I'm going to kill you".

129.     At all times the named defendants harassed and worked to intimidate the plaintiff in to not attending DTC meetings and or speaking at them, through a pattern of threats made by phone face to face and through a public campaign directed at embarrassing the plaintiff into not speaking publicly about politics.

130.     At all times the named defendants acted in concert, conspired and worked in the furtherance of said conspiracy through meetings in individual homes including but not limited to the home of defendant Shelia Parizo.

131.     At all times after April 21st 2009 the named defendants failed to notify the plaintiff of DTC meetings and other DTC sponsored events held pursuant to their power as members, officers and agents of the Derby Democratic Town Committee (DTC) pursuant to CGS Sec. 9-390

132.     By the admission of Defendant Dan Sexton the plaintiffs race and his refusal to appoint either defendant Sam Rizzitelli or Marc Garofalo were the driving and deciding factors for the actions of the named defendants.

133.     At all times the named defendants acted in concert, conspired and worked in the furtherance of said conspiracy with the intent to deny the plaintiff his first amendment rights based on his race and his refusal to engage in a political quid pro quo.

134.    At all times the defendants acted under color of law pursuant to CGS Sec.

9-390 and while acting under color of law said defendants did specifically

conspire and work to violate the plaintiffs 1st Amendment Rights.

135.    The acts of the Derby defendants have resulted in the plaintiff being

denied his 1st Amendment right to Assemble has thus caused

the plaintiff damages.

**COUNT FOUR VIOLATION OF 1ST AMENDMENT RIGHT TO
ASSOCIATION BY THE DERBY DEFENDANTS**

136.    The plaintiff realleges all as set forth from 1-137  as if incorporated herein

137.    Specifically, the Derby defendants did deny the plaintiff an opportunity to

fairly compete for elective office and engage in activities such as public

speaking at town committee meetings and associate with DTC members

through threats and intimidation.

138.    Specifically the plaintiff was harassed, yelled at, threatened and other wise

intimidated and even ordered not to speak although this was his right as a

member of the Democratic Town Committee, as a candidate, a registered

Democrat and a citizen.

**139.**     Specifically the plaintiff was told not to speak on political matters and was threatened with "serious consequences" including but not limited to, law suits and arrest by defendants Rizzitelli and Duggatto if he continued to exercise his right to free speech at said meetings.

**140.**     Specifically the plaintiff was told by the Derby defendants separately and collectively to not discus political issues at said meetings.

**141.**     The plaintiff was threatened separately and individually by the Derby defendants that he would be denied access to speak to Democratic Town Committee members at meetings if he did not promise in the presences of witnesses that he would appoint defendant Sam Rizzitelli Corporation Counsel of the City of Derby.

**142.**     The plaintiff was threatened separately and individually by the Derby defendants that he would be denied access to speak to Democratic Town Committee members at meetings if he did not promise in the presences of witnesses that he would appoint former Mayor Marc Garofalo to Chief Administrative Assistant to the Mayor of the City of Derby.

143.     The plaintiff refused to appoint either defendant Sam Rizzitelli or Marc Garofalo and was intimidated through threats specifically by defendant Christine Robinson who shouted the plaintiff down and refused to allow the plaintiff to speak at a DTC meeting on March 25th 2009.

144.     The plaintiff refused to appoint either defendant Sam Rizzitelli or Marc Garofalo and was intimidated through threats specifically by defendant Christine Robinson who assaulted the plaintiff and stated to the plaintiff on April 21st 2009, "I'm going to kill you".

145.     At all times the named defendants harassed and worked to intimidate the plaintiff in to not attending DTC meetings and or speaking at them, through a pattern of threats made by phone face to face and through a public campaign directed at embarrassing the plaintiff into not speaking publicly about politics.

146.     At all times the named defendants acted in concert, conspired and worked in the furtherance of said conspiracy through meetings in individual homes including but not limited to the home of defendant Shelia Parizo.

147.     At all times after April 21st 2009 the named defendants failed to notify the plaintiff of DTC meetings and other DTC sponsored events held pursuant to their power as members, officers and agents of the Derby Democratic Town Committee (DTC) pursuant to CGS Sec. 9-390

**148.**     By the admission of Defendant Dan Sexton the plaintiffs race and his refusal to appoint either defendant Sam Rizzitelli or Marc Garofalo were the driving and deciding factors for the actions of the named defendants.

**149.**     At all times the named defendants acted in concert, conspired and worked in the furtherance of said conspiracy with the intent to deny the plaintiff his first amendment rights based on his race and his refusal to engage in a political quid pro quo.

**150.**     At all times the defendants acted under color of law pursuant to CGS Sec. 9-390 and while acting under color of law said defendants did specifically conspire and work to violate the plaintiffs 1st Amendment Rights.

**151.**     The acts of the defendants have resulted in the plaintiff being denied his 1st Amendment right of Association has thus caused the plaintiff damages.

**COUNT SIX VIOLATION OF 14TH AMENDMENT RIGHT OF DUE PROCESS BY THE DERBY DEFENDANTS**

152.     The plaintiff realleges all as set forth from 1-153  as if incorporated herein

153.     The Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the DTC and or agents thereof did prevent and otherwise hinder the plaintiffs due process rights pursuant to the 14th  Amendment of the U.S. Constitution.

154.     The Derby defendants are not private actors but state actors pursuant to CGS Sec. 9-390 and are the only entity within the city of Derby legally capable of bestowing the Democratic nomination via a Town Committee endorsement upon any registered Democrat who competes for such an endorsement.

155.     Specifically, the Derby defendants did deny the plaintiff an opportunity to fairly compete for elective office and engage in activities such as public speaking at town committee meetings through threats and intimidation.

156.     Specifically, the Derby defendants did deny the plaintiff an opportunity to fairly compete for the Democratic nomination as the endorsed candidate of the Derby Democratic Town Committee and thus the Democratic Party by blocking his access to meetings of said body through threats and intimidation.

157.     Specifically, the Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the DTC and or agents thereof engaged in a public and private campaign to hinder and other wise stop the plaintiff from attending any Town Committee meetings and thus denying the plaintiff his right of due process as it pertains to seeking the legal endorsement of the DTC.

158.     Specifically defendant Rizzitelli did order all other defendants to not provide notice of DTC meeting thus denying the plaintiff access and the right of  due process as it pertains to seeking the legal endorsement of the DTC..

159.     Specifically, defendant Watson in her capacity as third ward chair did purposely fail to provide notice of DTC meetings and events in an attempt to prevent the plaintiff from exercising his right of  right to due process as it pertains to seeking the legal endorsement of the DTC.

160.   Specifically on April 21, 2009, defendant Christine Robinson did assault and threaten to kill the plaintiff with the intent and purpose of intimidating the plaintiff from assembling and pursuing his 14th Amendment Rights of due process as it pertains to seeking the legal endorsement of the DTC..

161.   The actions of the defendants collectively, individually and as agents and members of the Derby Democratic Town Committee did result in the purposeful shutting out of the plaintiff from the only legal process that could only be administered by these defendants and would have afforded an opportunity to compete for the ballot access as the endorsed Democratic nominee for Mayor of the City of Derby.

162.   The plaintiff had a legal right as a registered Democrat to freely seek the Democratic party endorsement yet he was denied and shut out of this process by a campaign of intimidation, threats and a lack of notice of opportunities by the defendants.

163.   The actions of the defendants collectively, individually and as agents and members of the Derby Democratic Town Committee did result in the plaintiff being denied due process by being denied the right to freely compete for the endorsement of the Derby Democratic Town Committee for Mayor of the City of Derby.

164.     The acts of the Derby defendants have resulted in the plaintiff being

denied his 14th Amendment right of due process and  has thus caused

the plaintiff damages.

## COUNT SEVEN VIOLATION OF 14TH AMENDMENT RIGHT OF EQUAL PROTECTION  BY THE DERBY DEFENDANTS

165.     The plaintiff realleges all as set forth from 1-166  as if incorporated herein.

166.     The Derby defendants collectively and individually under color of law in

their individual and others in their collective capacity as members of the

DTC did prevent and other wise hinder the plaintiffs equal protection

rights pursuant to the 14th  Amendment of the U.S. Constitution.

167.     The Derby defendants are not private actors but state actors pursuant to

CGS Sec. 9-390 and are the only entity within the city of Derby legally

capable of bestowing the Democratic nomination via a Town Committee

endorsement upon any registered Democrat who competes for such an

endorsement.

168.     Specifically, the Derby defendants did deny the plaintiff an opportunity to

fairly compete for elective office and engage in activities such as public

speaking at town committee meetings through threats and intimidation.

169.     Specifically, the Derby defendants did deny the plaintiff an opportunity to fairly compete for the Democratic nomination as the endorsed candidate of the Derby Democratic Town Committee and thus the Democratic Party by blocking his access to meetings of said body through threats and intimidation.

170.     Specifically, the Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the DTC and or agents thereof engaged in a public and private campaign to hinder and other wise stop the plaintiff from attending any Town Committee meetings and thus denying the plaintiff his right of equal protection as it pertains to seeking the legal endorsement of the DTC on the same footing as any other registered Democrat elector in Derby who sought the endorsement.

171.     Specifically defendant Rizzitelli did order all other defendants to not provide notice of DTC meeting thus denying the plaintiff access and the right of  equal protection as it pertains to seeking the legal endorsement of the DTC on the same footing as any other registered Democrat elector in Derby who sought the endorsement.

172.     Specifically, defendant Watson in her capacity as third ward chair did purposely fail to provide notice of DTC meetings and events in an attempt to prevent the plaintiff from exercising his right of equal protection as it pertains to seeking the legal endorsement of the DTC on the same footing as any other registered Democrat elector in Derby who sought the endorsement.

173.     Specifically on April 21, 2009, defendant Christine Robinson did assault and threaten to kill the plaintiff with the intent and purpose of intimidating the plaintiff from assembling and pursuing his 14th Amendment Rights of equal protection as it pertains to seeking the legal endorsement of the DTC on the same footing as any other registered Democrat elector in Derby who sought the endorsement.

174.     The actions of the defendants collectively, individually and as agents and members of the Derby Democratic Town Committee did result in the purposeful shutting out of the plaintiff from the only legal process that could only be administered by these defendants that would have afforded an opportunity to compete for the ballot access as the endorsed Democratic nominee for Mayor of the City of Derby.

175.     The plaintiff had a legal right as a registered Democrat to freely seek the Democratic party endorsement yet he was denied and shut out of this process by a campaign of intimidation, threats and a lack of notice of opportunities by the defendants.

176.     The actions of the defendants collectively, individually and as agents and members of the Derby Democratic Town Committee did result in the plaintiff being treated differently under color of law and thus being denied equal protection of the law as it pertains to seeking the legal endorsement of the DTC on the same footing as any other registered Democrat elector in Derby who sought the endorsement.

177.     The acts of the Derby defendants have resulted in the plaintiff being denied his 14th Amendment right of equal protection and  has thus caused the plaintiff damages.

**COUNT EIGHT VIOLATION OF 15Th AMENDMENT RIGHT TO VOTE BY THE DERBY DEFENDANTS**

178.     The plaintiff realleges all as set forth from 1-179  as if incorporated herein

179.     The plaintiffs 15th Amendment Right to vote has been denied and abridged by the named Derby defendants.

180.    The Derby defendants are not private actors but state actors pursuant to CGS Sec. 9-390 and are the only entity within the city of Derby legally capable of bestowing the Democratic nomination via a Town Committee endorsement upon any registered Democrat who competes for such an endorsement.

181.    Specifically, the Derby defendants did deny the plaintiff an opportunity to fairly compete for elective office and engage in activities such as public speaking at town committee meetings through threats and intimidation.

182.    Specifically, the Derby defendants did deny the plaintiff an opportunity to fairly compete for the Democratic nomination as the endorsed candidate of the Derby Democratic Town Committee and thus the Democratic Party by blocking his access to meetings of said body through threats and intimidation thus denying the plaintiff an opportunity to vote for the endorsed Democratic candidate of his choice.

183.    Specifically, the Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the DTC and or agents thereof engaged in a public and private campaign to hinder and other wise stop the plaintiff from attending any Town Committee meetings thus denying the plaintiff an opportunity to vote for the endorsed Democratic candidate of his choice.

184.     Specifically defendant Rizzitelli did order all other defendants to not provide notice of DTC meeting thus denying the plaintiff an opportunity to vote for the endorsed Democratic candidate of his choice.

185.     Specifically, defendant Watson in her capacity as third ward chair did purposely fail to provide notice of DTC meetings and events in an attempt to prevent the plaintiff from exercising his 15th Amendment right and therefore vote for himself as it pertains to seeking the legal endorsement of the DTC.

186.     Specifically on April 21, 2009, defendant Christine Robinson did assault and threaten to kill the plaintiff with the intent and purpose of intimidating the plaintiff from assembling and pursuing his 15th Amendment right and therefore vote for himself as it pertains to seeking the legal endorsement of the DTC.

187.     The actions of the defendants collectively, individually and as agents and members of the Derby Democratic Town Committee did result in the purposeful shutting out of the plaintiff from the only legal process that could only be administered by these defendants that would have afforded an opportunity to compete for the ballot access as the endorsed Democratic nominee for Mayor of the City of Derby.

188.     The plaintiff had a legal right as a registered Democrat to freely seek the Democratic party endorsement yet he was denied and shut out of this process by a campaign of intimidation, threats and a lack of notice of opportunities by the defendants.

189.     The actions of the defendants collectively, individually and as agents and members of the Derby Democratic Town Committee did result in the plaintiff being denied an opportunity to vote for the endorsed Democratic candidate of his choice for Mayor of the City of Derby.

190.     Specifically, the Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the DTC have engaged in a public and private campaign to hinder and other wise stop the plaintiff from being a candidate and voting for himself.

191.     Specifically, the Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the DTC have engaged in a public and private campaign to hinder and other wise stop the plaintiff from fairly obtaining ballot access to vote for the candidate of his choice.

192.     Specifically, the Derby defendants collectively and individually under color of law in their individual and others in their collective capacity as members of the DTC have engaged in a public and private campaign to hinder and other wise stop the plaintiff from attending any Town Committee meetings and thus denying the plaintiff his right to vote and as such nominate the Democratic Candidate of his choice for Mayor of Derby Connecticut.

193.     Specifically defendant Rizzitelli did order all other defendants to not provide notice of DTC meeting thus denying the plaintiff access and a right to vote.

194.     Specifically, defendant Watson in her capacity as third ward chair did purposely fail to provide notice of DTC meetings and events in an attempt to prevent the plaintiff from exercising his right to vote.

195.     Specifically on April 21, 2009, defendant Christine Robinson did assault and threaten to kill the plaintiff with the intent and purpose of intimidating the plaintiff from assembling and pursuing his 15th Amendment Rights.

196.     The acts of the Derby defendants have resulted in the plaintiff being denied his 15th Amendment right to vote and  has thus caused the plaintiff damages.

**COUNT NINE VIOLATION OF 42 U.S.C. §1983 BY THE DERBY DEFENDANTS**

197.    The plaintiff realleges all as set forth from 1-198 as if incorporated herein

198.    The plaintiff alleges that the Derby defendants under color of law have caused the plaintiff to suffer a deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States and the State of Connecticut in violation of 42 U.S.C. §1983.

199.    Specifically the rights in question are those enumerated at amendments 1, 14 and 15 made applicable to the state and its political subdivisions through the 14th amendment to the United States Constitution.

200.    Specifically the Derby defendants through their conspiracy abridged and denied the plaintiffs right to freedom of speech, the right to assemble and the right to petition pursuant to the 1st amendment of the U.S. Constitution.

201.    Specifically the Derby defendants through their conspiracy abridged and denied the plaintiffs rights to privileges, immunities, liberty, due process and equal protection of the laws made applicable to the state and its political subdivisions including Derby through the 14th amendment to the U.S. Constitution.

202.     Specifically the Derby defendants through their conspiracy

abridged and denied the plaintiffs right to vote based on his race

in violation of the 15th amendment to the United States Constitution.

203.     Specifically the Derby defendants through their conspiracy

acting under color of law have abridge the plaintiff rights of free speech,

redress through petition, due process and equal protection in violation of

42 U.S.C. §1983.

204.     Specifically the Derby defendants through their conspiracy

acting under color of law violated the plaintiffs Constitutional Rights

pursuant to the Connecticut Constitution at Section 1, Section 2, Section 4,

Section 5, Section 7, Section 14 and Section 20

violation of 42 U.S.C. §1985.

205.     These acts have resulted in the plaintiff being damaged as to his

constitutional rights in violation of 42 U.S.C. §1983.

## COUNT TEN VIOLATION OF  42 U.S.C. §1985 BY THE DERBY DEFENDANTS

206.     The plaintiff realleges all as set forth from 1-207  as if incorporated

207.     The Derby defendants have conspired directly and indirectly for the

purpose of depriving the plaintiff of equal privileges and immunities

under the laws of Connecticut and the United States.

208.     The Derby defendants have conspired directly and indirectly for the purpose of preventing and hindering the constituted authorities of the state of Connecticut and the city of Derby their agents and assigns from giving or securing to the plaintiff protection of the laws.

209.     The Derby defendants have conspired directly and indirectly for the purpose of preventing by threat and intimidation the plaintiff who is lawfully entitled to vote for the candidate of his choosing from having said choice.

210.     The Derby defendants have conspired directly and indirectly for the purpose of preventing by threat and intimidation the plaintiff from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person including himself.

211.     Specifically the Derby defendants through their conspiracy abridged and denied the plaintiffs right to freedom of speech, the right to assemble and the right to petition pursuant to the 1st amendment of the U.S. Constitution.

212.     Specifically the Derby defendants through their conspiracy abridged and denied the plaintiffs rights to privileges, immunities, liberty, due process and equal protection of the laws made applicable to the state and its political subdivisions including Derby through the 14th amendment to the U.S. Constitution.

213.     Specifically the Derby defendants through their conspiracy

abridged and denied the plaintiffs right to vote based on his race

in violation of the 15th amendment to the United States Constitution.

214.     The plaintiff has been injured in his person and his property by the acts of

the Derby defendants in violation of 42 U.S.C. §1985 (3).

215.     These acts have resulted in the plaintiff being damaged as to his

constitutional rights in violation of 42 U.S.C. §1985 (3).

216.     Specifically the Derby defendants through their conspiracy

acting under color of law violated the plaintiffs Constitutional Rights

pursuant to the Connecticut Constitution at Section 1, Section 2, Section 4,

Section 5, Section 7, Section 14 and Section 20 violation of 42 U.S.C.

§1985 and 42 U.S.C. §1986.

217.     These acts have resulted in the plaintiff being damaged as to his

constitutional rights in violation of 42 U.S.C. §1985.

**COUNT ELEVEN VIOLATION OF 42 U.S.C. §1986 BY THE DERBY DEFENDANTS**

**218.** The plaintiff realleges all as set forth from 1-221 as if incorporated herein

**219.** The Derby Defendants collectively and independently of each other knew of the conspiracy to injure, harm and deprive the plaintiff of his civil rights as set forth herein.

**220.** Said conspiracy inter alia consisted of meeting, planning and discussing methods and ways to intimidate and harass the plaintiff into forgoing seeking the endorsement to be the Democratic Nominee for mayor of the City of Derby.

**221.** Said conspiracy inter alia consisted of threats of violence specifically from defendant Christine Robinson.

**222.** Said conspiracy inter alia consisted of the agreement among the defendants to limit access to meetings, notices and all rights and privileges the plaintiff had to pursue elective office and his membership on the defendant Derby Democratic Town Committee.

**223.** All of these acts were in the furtherance of a conspiracy directed and designed to the sole end of thwarting the plaintiff from pursuing voting for the candidates of his choice, seeking redress from the government, due process, free speech elective office and his membership on the defendant Derby Democratic Town Committee.

224.       At no time did any of the Derby defendants attempt or actually stop the

planning, preparation or any part, element or action of the conspiracy or

any act, plan or preparation in the furtherance of said conspiracy.

225.       The Derby defendants knew that their acts violated 42 U.S.C. §1986

and none of them at any time attempted to or actually stopped the

planning, preparation or any part element or action of the conspiracy or

any act, plan or preparation in the furtherance of said conspiracy.

226.       These non actions are violations of 42 U.S.C. §1986 and said

violations have damaged the plaintiff.

**COUNT  TWELVE VIOLATION OF SECTION 2 OF THE NATIONAL VOTING RIGHTS ACT OF 1965 (42 U.S.C. § 1973–1973AA-6) BY THE DERBY DEFENDANTS**

227.       The plaintiff realleges all as set forth from 1-228 as if incorporated herein

228.       The Derby Defendants acting under color of law, independently

and collectively have violated the plaintiffs rights pursuant to the National

Voting Rights Act of 1965 (42 U.S.C. § 1973–1973aa-6).

229.       Specifically, the Derby defendants have imposed on the plaintiff

a voting qualification or prerequisite to voting, that includes inter alia,

providing to the defendants and their agents employment if the

plaintiff were to be elected Mayor of Derby.

230.      Said voting qualification has denied and abridged the plaintiff right to vote and participate at DTC meetings in violation of Section 2 of the National Voting Rights Act of 1965 (42 U.S.C. § 1973–1973aa-6).

231.      Said voting qualifications also included financial support for defendant and other candidates even if the plaintiff did not support said candidates.

232.      The plaintiff is the only African American to ever be a DTC member and was treated differently in this regard than all other DTC members who are Caucasian in that he had specific requirements such as appointing  and or promising to appoint specific individuals including but not limited to defendant Rizzitelli to City jobs in order to even be considered  for the DTC endorsement as the Democratic nominee for Mayor of the City of Derby.

233.      The plaintiff had different requirements imposed upon him as similarly situated candidates who were Caucasians, specifically Dan Foley Vin Tonucci, Joe Bassi and George Kurtyka.

234.      These acts have denied the plaintiff access to voting at DTC meetings and thus violated his rights pursuant to Section 2 of the National Voting Rights Act of 1965 (42 u.s.c. § 1973–1973aa-6).

235.      Said acts of the Derby defendants have damaged the plaintiff.

**PRAYER FOR RELIEF:**

Wherefore, plaintiff respectfully ask this court and jury to:

(1)     The Plaintiff seeks monetary damages of not less than Forty Million Dollars for the purposeful abridgement and denial of his civil and constitutional rights.

(2)     The plaintiff seeks punitive damages of Forty Million Dollars for the purposeful abridgement and denial of his civil and constitutional rights.

(3)     The plaintiff seeks any and all equitable relief deemed necessary and proper by the court and within its powers to grant.

(4)     The plaintiff seeks any reasonable verdict by a jury of his peers as to the facts to be decided in his favor.

(5)     The plaintiff seeks a total in monetary actual damages of **Eighty Million Dollars $80,000,000**

**CLAIM FOR JURY:**

(1)  The plaintiff hereby respectfully demands a trial by jury of all foregoing facts.

**CLAIM FOR EQUITABLE RELIEF:**

(1)  The plaintiff hereby respectfully request equitable relief where appropriate of

the foregoing issues of law.

**Dated this 18Th Day of June 2010**

_/s/_  Mel Thompson,J.D._____
**58 MARSHALL LANE
DERBY, CT 06418
203-549-568
melthompsonjd@yahoo.com**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by Email, mail, or hand to the following:

Attorney Elio C.C. Morgan
Law Office of Elio C.C. Morgan
1100 New Britain Ave Suite 107
West Hartford, CT 06110

Attorney John Sponheimer
277 Wakelee Ave
Ansonia, CT 06401

 Dan Sexton
41 McLaughlin Terr
Derby, CT 6418

 /s/  Mel Thompson,J.D.
                    **58 MARSHALL LANE
                    DERBY, CT 06418
                    203-549-5686
                    melthompsonjd@yahoo.com**