UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Mel Thompson,<br>    *Plaintiff*,<br><br>        *v.*<br><br>Sam Rizzitelli, et al.,<br>    *Defendants*. | Civil No. 3:10cv71 (JBA)<br><br><br><br>March 29, 2011 |

RULING ON MOTION TO DISMISS

Plaintiff Mel Thompson filed an Amended Complaint *pro se* on June 18, 2010, claiming that Defendants Sam Rizzitelli, Shelia Parizo, Sandy Watson, James Watson, Paul Varsanik Jr., Anita Duggatto, Ronald Sill, Joyce Sill, Dan Sexton, John Orazietti, Christine Robinson (collectively "Individual Defendants"), and the Derby Democratic Town Committee ("DDTC" or "DTC") violated his rights under the First, Fourteenth, and Fifteenth Amendments to the United States Constitution, and his rights under the National Voting Rights Act of 1965, by conspiring to exclude him from fair competition for the Democratic nomination for Mayor of Derby, Connecticut on the basis of his race. Defendants move to dismiss [Doc. # 32] the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons set forth below, Defendants' Motion to Dismiss will be granted in part and denied in part.

I.    Factual Allegations

Thompson claims that through their involvement with the DDTC, each of the Individual Defendants participated in a conspiracy to intimidate and exclude him from DDTC meetings in order to prevent him from successfully seeking DDTC endorsement

during municipal elections for the Mayor of the Town of Derby on the basis of his race. The DDTC is a forty–five–member "unincorporated Political Association and quasi government entity that is an elected body responsible for the organization and operational support of Democratic candidates in the city of Derby [Connecticut]." (Am. Compl. [Doc. # 26] ¶¶ 30, 83.) According to Thompson, in December 2008 he first "raised the prospect that he would run for mayor" to Rizzitelli, chairman of the DDTC, and Rizzitelli responded "your [sic] crazy a black candidate is not going to get the town committee support." (*Id.* ¶ 44.) Rizzitelli continued to insist that Thompson's "race would be a factor in a 'small town' like Derby," but began to discuss with Thompson the possibility of helping Thompson gain DDTC support in exchange for Thompson's promise to name Rizzitelli "Corporation Counsel for the City of Derby" and former Mayor Marc Garofalo the Mayor's "Chief Administrative Assistant" if Thompson were elected Mayor. (*Id.* ¶¶ 45–47.) Thompson refused to promise any appointments and began preparing his mayoral candidacy by filing the necessary paperwork, sending direct mail, and maintaining a website in order to build support. (*Id.* ¶¶ 48–51.) Thompson claims that during this time, Rizzitelli began "to organize to prevent [Thompson] from participating in the endorsement process." (*Id.* ¶ 49.)

Defendant Anita Duggatto, treasurer and former DDTC chairwoman, allegedly informed Thompson that Rizzitelli "was in a panic" that Thompson might obtain party endorsement and began efforts in February 2009 to find a candidate for mayor that would make the appointments Rizzitelli had sought from Thompson. (*Id.* ¶¶ 52–53.) Rizzitelli, however, continued to try and elicit promises from Thompson that he would make the appointments if elected; Thompson refused and continued his campaign. (*Id.* ¶¶ 54–55.) Duggatto called Thompson "in the late winter of 2008/2009" and told him that she had

"brokered a deal with former State Representative Vin Tonucci to run for mayor and that she and the party wanted the plaintiff to run for Third Ward Alderman." (*Id.* ¶ 56.) Thompson claims that Duggatto informed him that Tonucci had agreed to "do what Sam wants so your [sic] off the hook," however Thompson continued to campaign and contacted Tonucci who denied making any promises and told Thompson that he "was not inclined to run." (*Id.* ¶¶ 57–58.) When Thompson told Duggatto about his conversation with Tonucci, Duggatto replied "Melvin your [sic] done, your [sic] not going to get on any ballot." (*Id.* ¶ 59.)

Thompson claims that between February and April 2009, "[a]ll Derby defendants" held "unpublicized and unauthorized Town Committee meetings," without Thompson, at Defendant Shelia Parizo's home "with the intent to block [Thompson] from fairly competing for the Democratic nomination" and "prevent[] him from actively participating in the nomination process and . . . the endorsement process of the [DDTC]." (*Id.* ¶¶ 60–62.) He further claims that statements made by Defendant Dan Sexton, a DDTC member, demonstrated that all individual defendants, "acting as DTC members or agents of the DTC," conspired "to deny [Thompson] the ability to access DTC members, attend meetings and campaign for the party endorsement, based on his race and his refusal to engage in a quid pro quo as to appointments if elected." (*Id.* ¶¶ 63–64.) According to Thompson, "all named defendants" referred to him "as a 'nigger' and also as a 'nut'." (*Id.* ¶ 65.) Rizzitelli, Duggatto, Defendant and DDTC member Christine Robinson, and Defendant and Third

3

Ward DDTC Chairwoman Sandy Watson, told Thompson "not to publish or speak about politics." (*Id.* ¶ 66.)

Again based on statements made to Thompson by Sexton, Thompson claims that Rizzitelli tasked Defendant Joyce Sill "with 'warning' employees who specifically worked with her in Derby City Hall that [Thompson] was a 'black man with a chip on his shoulder' and that 'he is going to fire all of us and hire only blacks to work for the city'." (*Id.* ¶ 67.) Thompson further claims, based on Sexton's statements to him, that Rizzitelli tasked Parizo and Sexton "with making sure that the First Ward Town Committee members would never 'vote for a nigger as the nominee,'" and tasked Defendants and DDTC members Ronald Sill, Paul Varsanik, and John Orazietti, and Defendants Sandy and James Watson, with ensuring the same in the Second and Third Wards, respectively. (*Id.* ¶¶ 68–70.) Thompson claims that he "was not allowed to speak at DTC meetings" and that Rizzitelli and Duggatto "threatened [him] with lawsuits and jail . . . if he . . . came to any DTC meeting uninvited and spoke on any political topic without first getting permission from them." (*Id.* ¶ 71.) In addition, Thompson claims that Christine Robinson threatened him with "death" and "assaulted" him. (*Id.* ¶ 72.)

Thompson alleges, based on Sexton's statements, that "Rizzitelli organized, developed said conspiracy," that "each and every defendant . . . knew their role, and knew they were acting as members of the DTC," and that "each and every defendant . . . knew that their actions were designed to deny [Thompson] his civil, statutory and constitutional rights

4

yet they engaged in these actions willingly." (*Id.* ¶¶ 73–75.) The aim and result of the "meetings, conversations and actions" of each individual Defendant, according to Thompson, was to deny Thompson access to the DDTC nominating process and access to the ballot as the endorsed DDTC mayoral candidate. (*Id.* ¶¶ 76–79.)

II.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Kuck v. Danaher*, 600 F.3d 159, 162–63 (2d Cir. 2010). A complaint will not survive a motion to dismiss if it relies on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or if "the well–pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S. Ct. at 1949–50.

III.    Discussion

Defendants move to dismiss Thompson's Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that this Court lacks subject matter jurisdiction because the DDTC is not a state actor, and the Individual Defendants' actions were not taken under color of law. Defendants also move to dismiss the Amended Complaint in its entirety for failure to state a claim upon which relief can be granted under the First, Fourteenth, or Fifteenth Amendments or under the National Voting Rights Act of 1965, and they likewise move to dismiss the claims against the DDTC on the

5

ground that Individual Defendants have been sued only in their individual capacity, and the DDTC is accordingly not liable for their alleged actions.[1]

### A. State Action and Actions Under Color of Law

Defendants, in moving to dismiss the claims against the DDTC, argue that the DDTC is not a state actor and cannot be held liable under Section 1983 and, in moving to dismiss the claims against the Individual Defendants, argue that these individuals did not act under color of state law.[2] Defendants argue that a private entity, such as the DDTC, is only a quasi–public agency and a state actor when that private entity is subject to "virtually day–to–day government supervision." (Mem. Supp. at 9–11.) Thompson argues in opposition that the DDTC and its members are state actors by virtue of Conn. Gen. Stat. § 9–390, which provides that "party–endorsed candidates of any party in any municipality for municipal office shall be selected, in accordance with the rules of such party, by . . . the town committee of such party" and, after being so endorsed "shall run in the primary of such party as party–endorsed candidates." (Obj. [Doc. # 37–1] at 11–13.)

---

[1] Although Defendants move to dismiss Thompson's claims pursuant to Rule 12(b)(1) for failure to allege facts that show deprivation of any federal rights, and reincorporate those arguments "for purposes of a 12(b)(6) motion as if that was the initial purpose" (Mem. Supp. [Doc. # 32–1] at 25), Rule 12(b)(6) properly guides the analysis for a motion to dismiss for failure to state a claim.

[2] "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 928 (1982). The analysis here will evaluate whether the complained–of actions in this case constitute "state action" because "[i]f the challenged conduct . . . constitutes state action . . . , then that conduct was also action under color of state law and will support a suit under § 1983." *Lugar*, 457 U.S. at 935.

To state a claim under Section 1983 upon which relief may be granted, a plaintiff must allege conduct that deprived him of a right secured by the Constitution of the United States committed by a person acting under color of state law, i.e. state action. *Lugar*, 457 U.S. at 927–28; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56 (1978). Section 1983 does not ordinarily reach the conduct of private actors. However, where private political parties perform a public function through their role in state-regulated elections, their actions can be properly classified as state action. *See Flagg Bros.*, 436 U.S. at 158 ("While the Constitution protects private rights of association and advocacy with regard to the election of public officials, our cases make it clear that the conduct of the elections themselves is an exclusively public function."). If a state statute assigns a private political party a special role in state or municipal elections or special access to the ballot in those elections, the party's procedure in selecting candidates for those elections can be state action to the extent it influences the electoral process. *Cal. Democratic Party v. Jones*, 530 U.S. 567, 573 (2000) ("[W]hen a State prescribes an election process that gives a special role to political parties, it 'endorses, adopts and enforces the discrimination against Negroes' that the parties . . . bring into the process–so that the parties discriminatory action becomes state action under the Fifteenth Amendment"); *Montano v. Lefkowitz*, 575 F.2d 378, 383 n.7 (2d Cir. 1978) ("[W]hen the state grants political parties the right to nominate candidates and then gives those nominees special access to the ballot, . . . the parties' procedures constitute state action."). To that end, where a private political party acts pursuant to its statutory authority in influencing state and local primary elections, it is subject to private suit under § 1983 if its actions contravene the U.S. Constitution. *See Terry v. Adams*, 345 U.S. 461, 469–70 (1953) (the Jaybird Democratic Association, a Texas county political organization, violated

7

the Fifteenth Amendment by excluding African–Americans from its primaries); *Campbell v. Bysiewicz*, 242 F. Supp. 2d 164, 175 (D. Conn. 2003) ("[T]he party's rules by which it selects its nominees must be subject to the same limits as limits on state action."); *Yassky v. Kings Cnty. Democratic Cnty. Comm.*, 259 F. Supp. 2d 210, 216 (E.D.N.Y. 2003) (the Kings County Democratic County Committee and its executive committee and chairperson "were clearly acting under color of state law in enacting a Rule that purported to restrict the ability of candidates for state elections to obtain the petition signatures by state law for access to the primary ballot," and action, "directly related to ballot access, that would be unconstitutional if done by the State").

Thompson alleges in his Amended Complaint that the DDTC, its leadership, and several of its members, used their authority pursuant to Conn. Gen. Stat. 9–390 to deny Thompson access to the ballot as a Derby mayoral candidate and prevent him from participating in the nomination process because of his race through threats, intimidation, and exclusion from DDTC events. Section 9–390(a) describes the candidate–endorsement power ceded to municipal political parties:

> [P]arty–endorsed candidates of any party in any municipality for municipal office shall be selected, in accordance with the rules of such party, by: (1) The enrolled members of such party in such municipality in caucus, (2) delegates to a convention chosen in accordance with such rules by such enrolled members, or (3) the town committee of such party.

Section 9–390(f) adds: "Candidates endorsed in the manner provided in subsection (a) . . . of this section shall run in the primary of such party as party–endorsed candidates." Thus, through Section 9–390, Connecticut has given the town committees of political parties a "special role" in municipal elections permitting them to endorse a particular candidate for municipal office during party primaries. Even if this DDTC endorsement does not wield the

8

same level of influence as did the Jaybird Association's endorsement in *Terry*, 345 U.S. at 469, where "[t]he Democratic primary and the general election ha[d] become no more than the perfunctory ratifiers of the choice that ha[d] already been made in Jaybird elections," committee endorsement nonetheless gives the DDTC–selected candidate special access to the ballot pursuant to a state grant of authority, *see Montano*, 575 F.2d at 383 n.7. Through the endorsement authority provided by Section 9–390, the DDTC distinguishes a certain candidate with the ultimate goal of aiding that candidate during Democratic primaries and Derby municipal elections. (*See, e.g.* Compl. ¶¶ 47–50.) Because the state–authorized endorsement process forms a part of the procedure by which private organizations perform a public function by nominating and giving ballot access to potential political candidates, the actions taken by the DDTC in furtherance of that endorsement process constitute state action. *See Campbell*, 242 F. Supp. 2d at 175.

B. Thompson's Constitutional Claims

Thompson claims that the actions of the Derby Defendants deprived him of a host of constitutional rights under the First, Fourteenth, and Fifteenth Amendments. The Derby Defendants argue that Thompson's factual allegations do not support plausible claims for relief under these Amendments.

The DDTC's activities are state action only insofar as they relate to the carrying out of its authorized powers under Section 9–390, to wit the endorsement of a particular candidate. *See, e.g. Max v. Republican Comm. of Lancaster Cnty.*, 587 F.3d 198, 202 (3d Cir. 2009) (holding that the Republican Committee of Lancaster County did not engage in state action by seeking to exclude plaintiff's political speech during a primary election, agreeing with the district court's reasoning that although the Committee had a role as a state actor in

9

primary elections, that does not necessarily mean that all of its actions are state actions). Consequently, as discussed below, to the extent that Thompson alleges unconstitutional wrongdoing in the internal workings of the DDTC that extends beyond his claim of racial discrimination in the DDTC's endorsement pursuant to Section 9–390, because that wrongdoing is not "state action" within the purview of this Court, those allegations fail to state a claim upon which relief may be granted under Section 1983.

A private political organization's allegedly discriminatory acts taken pursuant to a state grant of authority, to influence and control local elections are properly considered under the Fifteenth Amendment, *see Terry*, 345 U.S. at 469 (by excluding African–Americans, "[t]he Jaybird Party thus brings into being and holds precisely the kind of election that the Fifteenth Amendment seeks to prevent"), the Equal Protection clause of the Fourteenth Amendment, *see Montano*, 575 F.2d at 384 (claim that nomination of Congressional candidates by executive committees of county party committees "violated the principle of one man, one vote," "when properly analyzed rests . . . on the Equal Protection clause of the Fourteenth Amendment"), or the First Amendment right to freedom of association, *see Campbell*, 242 F. Supp. 2d at 176 ("Exclusion from an opportunity to be a party's candidate burdens the right of political association") (citing *Anderson v. Celebrezze*, 460 U.S. 780, 787–88 (1983)). However, internal management decisions made by a private organization are themselves entitled to First Amendment protection, and when it is not acting under color of law, the private organization may regulate and curtail the speech, attendance, rights and obligations of its members. *See Jones*, 530 U.S. at 573–77; *Max*, 587 F.3d at 202.

i. First Amendment Right to Free Speech

Thompson claims in Count One of his Amended Complaint that the Derby Defendants violated his First Amendment right to free speech by threatening and intimidating him and denying him access to DDTC functions in order to prevent him from speaking at DDTC meetings. (Am. Compl. ¶¶ 82–100.) The alleged actions of the Defendants are state action to the extent that Defendants implemented a policy of discrimination by excluding Thompson from endorsement consideration on the basis of his race, acting pursuant to their authority under Section 9–390. Their decisions regarding who may speak at DDTC functions and what they may say were not "state action," but instead an exercise of the DDTC and its members' own First Amendment rights. *See Jones*, 530 U.S. at 573–75 (comparing the decisions in *Terry* and *Allwright* with a political party's freedom of association rights in selecting the nominee of its choice)*; Max*, 587 F.3d at 202. Because the DDTC did not perform a public function pursuant to state regulation in coordinating the speech of its members, its alleged actions in curtailing Thompson's speech could not violate his First Amendment right of free speech.

ii. First Amendment Right to Petition for Redress

Thompson claims in Count Two that by denying him access to DDTC endorsement and excluding him from DDTC functions through threats, intimidation, and failure to provide "legal notice of their meetings," the Derby Defendants violated his First Amendment right to petition for redress. (Am. Compl. ¶¶ 101–119.) Defendants argue that as the DDTC is not a state actor, there is no "government" to which Thompson could have been denied a right to petition, and in any event, the Amended Complaint does not describe any act by Thompson that could be construed as a "petition." (Mem. Supp. at 20–21.)

11

The First Amendment provides that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." *See also BE & K Const. Co. v. NLRB*, 536 U.S. 516, 525–26 (2002). Nothing in Section 9–390 relates to the DDTC holding itself out as an entity that provides an avenue for redress. *See Jones*, 530 U.S. at 573–75; *Max*, 587 F.3d at 202. While the DDTC's allegedly discriminatory endorsement process can be viewed as an unconstitutional abuse the state's grant of authority to make those party endorsements, its failure to allow petitions for redress cannot. In addition, as the Defendants argue, Thompson does not include in his Amended Complaint any facts that suggest he attempted to petition the DDTC to redress what he perceived as mistreatment. Accordingly, Thompson has not stated a claim for violation of his First Amendment petition rights that is plausible on its face.

iii. First Amendment Right to Assembly

Thompson claims in Count Three that by banning him from DDTC gatherings through threats and intimidation, Defendants violated his First Amendment right to assemble. (Am. Compl. ¶¶ 120–135.) Defendants argue that this claim should be dismissed because the right to assemble applies only to public forums, and the Amended Complaint cites no public forum to which Thompson was denied access. (Mem. Supp. at 20.)

Once again, the facts of Thompson's Amended Complaint do not reveal any state action with respect to this particular claim. The DDTC's power to endorse candidates under Section 9–390 has nothing to do with the forums in which the DDTC conducts its business. *Compare Max*, 587 F.3d at 202. That the DDTC's allegedly discriminatory endorsement procedure constitutes state action does not necessarily mean that all "party affairs are public affairs." *Jones*, 530 U.S. at 573. Without any state action by the DDTC with regard to

12

assembly or any public forum, Thompson has failed to allege a violation of his First Amendment right of assembly.

        iv.       First Amendment Right to Association

Thompson again invokes the First Amendment in Count Four in claiming that by "deny[ing][him] an opportunity to fairly compete for elective office," Defendants violated his First Amendment right of association. (Am. Compl. ¶¶ 136–151.) Defendants argue that Thompson was not denied the right to association because that right "does not include the right to be the endorsed candidate or even a member of a particular political party." (Mem. Supp. at 22.)

Unlike Thompson's other First Amendment claims, his factual allegations, in the context of the properly alleged state action by the DDTC, present a plausible claim under the First Amendment's right of association. Although there may not be a First Amendment right to party endorsement, where a political party or its local committee, acting pursuant to a grant of state authority, discriminatorily eliminates an individual's *opportunity* to compete for the endorsement made possible by state statute, that discriminatory elimination violates the right of political association. *See Campbell*, 242 F. Supp. 2d at 176 ("Exclusion from an opportunity to be a party's candidate burdens the right of political association.") (citing *Anderson,* 460 U.S. at 787–88). When a political party exercises its protected right to associate with whomever it chooses as its endorsed or nominated candidate, *see Jones*, 530 U.S. at 573–75, and engages in a public election process, as the DDTC did here, it cannot "so unreasonably restrict [access to primaries] as to make meaningless a member's right to be considered for nomination." *Campell*, 242 F. Supp. 2d at 175. Thompson's Amended Complaint alleges unreasonable restriction on access to the DDTC endorsement, claiming

assembly or any public forum, Thompson has failed to allege a violation of his First Amendment right of assembly.

        iv.       First Amendment Right to Association

Thompson again invokes the First Amendment in Count Four in claiming that by "deny[ing][him] an opportunity to fairly compete for elective office," Defendants violated his First Amendment right of association. (Am. Compl. ¶¶ 136–151.) Defendants argue that Thompson was not denied the right to association because that right "does not include the right to be the endorsed candidate or even a member of a particular political party." (Mem. Supp. at 22.)

Unlike Thompson's other First Amendment claims, his factual allegations, in the context of the properly alleged state action by the DDTC, present a plausible claim under the First Amendment's right of association. Although there may not be a First Amendment right to party endorsement, where a political party or its local committee, acting pursuant to a grant of state authority, discriminatorily eliminates an individual's *opportunity* to compete for the endorsement made possible by state statute, that discriminatory elimination violates the right of political association. *See Campbell*, 242 F. Supp. 2d at 176 ("Exclusion from an opportunity to be a party's candidate burdens the right of political association.") (citing *Anderson,* 460 U.S. at 787–88). When a political party exercises its protected right to associate with whomever it chooses as its endorsed or nominated candidate, *see Jones*, 530 U.S. at 573–75, and engages in a public election process, as the DDTC did here, it cannot "so unreasonably restrict [access to primaries] as to make meaningless a member's right to be considered for nomination." *Campell*, 242 F. Supp. 2d at 175. Thompson's Amended Complaint alleges unreasonable restriction on access to the DDTC endorsement, claiming

that DDTC members, on account of Thompson's race, engaged in a wide–ranging conspiracy to summarily block his efforts to seek DDTC endorsement as part of the DDTC's endorsement procedure under Section 9–390. Thompson has accordingly stated a claim under the First Amendment right of association that is plausible on its face.

> v. Fourteenth Amendment Claims

Thompson alleges that the discriminatory procedures and actions of the DDTC and the Individual Defendants violated his Due Process (Count Six)[3] and Equal Protection (Count Seven) rights under the Fourteenth Amendment. (Am. Compl. ¶¶ 152–77.) The Defendants do not address his Due Process claims in their Motion to Dismiss but argue that the Equal Protection claim should be dismissed because Thompson has not alleged that any state actor intentionally discriminated against him on the basis of his race. (Mem. Supp. at 24.)

"A touchstone of equal protection is that the government may not subject persons to unequal treatment based on race." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 49 (2d Cir. 1999). However, as discussed above, the actions of a private political party can be state action under the Fourteenth Amendment where that party performs a state–regulated election function. *See Flagg Bros.*, 436 U.S. at 158; *Montano*, 575 F.2d at 383 & n.7. The Second Circuit has explicitly recognized that allegations of discrimination in a party committee's state–authorized primary procedures are properly analyzed under the equal protection clause of the Fourteenth Amendment. *Montano*, 575 F.2d at 384 (claim that nomination of Congressional candidates by executive committees of county party committees "violated the principle of one man, one vote," "when properly analyzed

---

[3] Thompson does not include a Count Five in his Amended Complaint.

14

rests . . . on the Equal Protection clause of the Fourteenth Amendment"). Thompson has properly alleged state action by the DDTC in implementing its endorsement procedures pursuant to Section 9–390 and that he was summarily and discriminatorily excluded from that endorsement process on the basis of his race. He has accordingly alleged that a state actor has subjected him to unequal treatment on the basis of his race, s*ee Hayden*, 180 F.3d at 49, and has therefore stated a claim for relief under the Equal Protection clause that is plausible on its face.

### vi. Fifteenth Amendment Claims

Thompson's final Constitutional claim (Count Eight) is that the Defendants, by excluding him from pursuing DDTC endorsement and ultimately "obtaining ballot access to vote for the candidate of his choice" denied Thompson his Fifteenth Amendment right to vote. (Am. Compl. ¶¶ 178–96.) Defendants argue that an internal party endorsement process is not included within the purview of the Fifteenth Amendment. (Mem. Supp. 24–25.)

"[W]hen a State prescribes an election process that gives a special role to political parties . . . the parties' discriminatory action becomes state action under the Fifteenth Amendment." *Jones*, 530 U.S. at 573; *see also Terry*, 345 U.S. at 469. It is precisely the exclusion of individuals from state–authorized primaries on the basis of race that the Supreme Court found to violate the Fifteenth Amendment in *Terry*, 345 U.S. at 469. Thompson alleges in his Amended Complaint that the DDTC and its members excluded him from the opportunity to be considered in the endorsement process because he is African–American. In light of the state action analysis above, this is a properly alleged

discrimination claim under the Fifteenth Amendment. Thompson has accordingly stated a claim under the Fifteenth Amendment that is plausible on its face.

### vii. The National Voting Rights Act

Thompson claims in Count Twelve that Defendants violated Section 2 of the Voting Rights Act of 1965 by imposing special requirements on him, namely requiring him to promise to make certain appointments if elected, in order to be able to vote at DDTC meetings. (Am. Compl. ¶¶ 227–235.) Defendants again move to dismiss this claim on the ground that Thompson has not alleged any action by the state. (Mem. Supp. 15–16.)

Section 2 of the Voting Rights Act of 1965 provides: "No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 42 U.S.C. § 1973(a). Thompson's claims with respect to the Voting Rights Act do not relate to the DDTC's endorsement power under Section 9–390, but instead his ability to participate in DDTC meetings. Because they do not relate to the state grant of authority under Section 9–390, Defendants' actions with respect to voting requirements at DDTC meetings are not state action, *see Jones*, 530 U.S. at 573–75, and Thompson has therefore failed to state a claim for relief under the Voting Rights Act.

### viii. Sections 1983, 1985, and 1986

Thompson, in Count Nine of the Amended Complaint, brings a claim for relief under 42 U.S.C. § 1983, distinct from his constitutional claims. Defendants correctly point out that Section 1983 "is available to enforce both statutory and constitutional rights" and does not provide a stand–alone cause of action independent of the rights sought to be

enforced. *Quackenbush v. Johnson City Sch. Dist.*, 716 F.2d 141, 148 (2d Cir. 1983). Since the individual constitutional rights have been set out separately in other counts, Count Nine will be dismissed.

In Counts Ten and Eleven, Thompson also claims violations of Sections 1985 and 1986. Defendants move to dismiss these counts, arguing that Thompson has failed to state a claim under either section upon which relief may be granted. Section 1985(3), which Thompson relies on in Count Ten, proscribes in relevant part conspiracy to prevent "any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified persons as an elector for President or Vice President, or as a Member of Congress of the United States." 42 U.S.C. § 1985(3). By its terms, Section 1985(3) applies only to Presidential and Congressional elections. Thompson has not alleged that the conduct of the DDTC or its members in any way related to such an election; his claims concern only the Derby municipal elections. Count Ten will therefore be dismissed.

Section 1986 applies only to individuals with knowledge of discriminatory practices prohibited by Section 1985. As Thompson has failed to state a claim under Section 1985, Count Eleven will also be dismissed.

C. Claims Against DDTC

Defendants also move to dismiss all of the claims against the DDTC on the ground that the DDTC is not directly liable to Thompson for any of his alleged injuries because the Amended Complaint alleges only acts of the Individual Defendants in their personal capacity, rather than acts taken in their official capacity as DDTC members. (Mem. Supp. at 12.) Without a causal nexus between Thompson's alleged injuries and the DDTC,

Defendants argue that the DDTC cannot be liable. (*Id.*) Thompson does not respond to this argument and does not address the issue in his Objection.

The Amended Complaint does not make clear whether Thompson is suing each of the Individual Defendants in their personal capacity or in their official capacity as DDTC members and directors. However, plaintiffs are afforded a certain degree of leeway in this respect: "when the face of a complaint fails to state clearly whether a government official is being sued in his official capacity, or his individual capacity, or both, courts look to the course of the proceedings to determine the nature of the liability to be imposed." *Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993) (internal quotation marks and citations omitted). "[A] plaintiff who has not clearly identified in her complaint the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other." *Id.*

Without using the catchphrase "official capacity," Thompson repeatedly refers to the Individual Defendants in the Amended Complaint as acting as "members and or officials and authorized agents" of the DDTC. (*E.g.* Am Compl. ¶¶ 77–80.) Without absolute clarity, Thompson appears to allege that the Individual Defendants used their authority as members and officers of the DDTC to impact the DDTC's endorsement process. Given the leeway afforded plaintiffs in alleging "official capacity," and considering in particular Thompson's *pro se* status, it would be premature to assume, based on the wording of his Amended Complaint, that he intended only to sue the Individual Defendants in their individual capacity rather than their official capacity as well.

IV. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss [Doc. # 32] is GRANTED in part and DENIED in part. Counts One, Two, Three, Nine, Ten, Eleven, and Twelve of Thompson's Amended Complaint are dismissed. Counts Four, Six, Seven, and Eight remain for further adjudication.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of March, 2011.