IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-----------------------------------------x
                                         :
MEL THOMPSON                             :           3:10 CV 0071 (JBA)
                                         :
                                         :
v.                                       :
                                         :
SAM RIZZITELLI, ET AL.                   :           DATE: OCTOBER 14, 2011
                                         :
-----------------------------------------x
```

RULING ON PLAINTIFF'S APPLICATIONS FOR PREJUDGMENT REMEDY AGAINST
DEFENDANT CHRISTINE ROBINSON

On January 15, 2010, plaintiff, who is proceeding pro se,[1] initiated this action against

defendants Sam Rizzitelli, Shelia Parizo, Sandy Watson, James Watson, Dan Sexton, Anita

Duggatto, Christine Robinson, Ronald Sill, Joyce Sill, Paul Varsanik, Jr., John Orazietti, and

the Derby Democratic Town Committee ["DDTC"](Dkt. #1), which Complaint was superseded

by an Amended Complaint filed on June 18, 2010.  (Dkt. #26).  In his Amended Complaint,

plaintiff alleges that defendants violated his constitutional and civil rights, including his rights

under the First, Ninth,  Fourteenth and Fifteenth Amendments , 42 U.S.C. §§ 1983, 1985(3),

and 1986, and Section 2 of the National Voting Rights Act of 1965, 42 U.S.C. § 1973, in

---

[1]As this Magistrate Judge noted in the Ruling on Plaintiff's Application for Prejudgment
Remedy Against Defendant Sexton (Dkt. #25), familiarity with which is presumed, plaintiff is well
educated and has had legal training.  See, e.g., Thompson v. Am. Bar Ass'n, 05 CV 1493 (CFD),
2007 WL 987807, at *1 (D. Conn. Mar. 30, 2007)(plaintiff has a bachelor's degree and a master's
degree in political science from Southern Connecticut State University and graduated with a law
degree from an internet correspondence law school located in California).

On March 9, 2010, plaintiff filed a Motion for Prejudgment Remedy against defendant Dan
Sexton in the amount of $500,000, which motion was referred to this Magistrate Judge by United
States District Judge Janet Bond Arterton thirteen days later; a hearing was held on June 14, 2010,
at which defendant Sexton did not appear.  (Dkts. ##5-9, 24).   Four days after the hearing, this
Magistrate Judge issued a ruling granting plaintiff's Motion for Prejudgment Remedy in the amount
of $42,000.  (Dkt. #25).

conspiring to deprive and depriving plaintiff of political access in the City of Derby.[2]  (Id.).

On June 24, 2010, plaintiff filed a Motion for Prejudgment Remedy in the amount of $300,000 against defendant Christine Robinson, with brief in support (Dkt. #30), which was referred to this Magistrate Judge four days later by U.S. District Judge Janet Bond Arterton. (Dkt. #31).  On July 2, 2010, defendants filed a Motion to Dismiss for Lack of Jurisdiction, along with a Motion to Stay plaintiff's Motion for Prejudgment Remedy.  (Dkts. ##32-33).  On August 19, 2010, this Magistrate Judge granted defendants' Motion to Stay, over plaintiff's objection, without prejudice to renewal after Judge Arterton ruled on defendants' Motion to Dismiss.  (Dkt. #40; see also Dkts. ##27, 34-35, 41-44, 48-50, 52, 62-67, 70-73).

On March 29, 2011, Judge Arterton granted in part and denied in part defendants' Motion to Dismiss, dismissing Counts One, Two, Three, Nine, Ten, Eleven and Twelve of plaintiff's Amended Complaint,[3] and denying dismissal of plaintiff's claims of violations of plaintiff's First Amendment Right to Association (Count Four), plaintiff's Fourteenth Amendment due process and equal protection rights (Counts Six and Seven), and plaintiff's Fifteenth Amendment right to vote (Count Eight).  2011 WL 1215190, at *4-8.  Specifically, Judge Arterton held that defendants' actions, about which plaintiff complains, were taken in furtherance of their candidate-endorsement power ceded to municipal political parties

---

[2]Specifically, plaintiff alleges, inter alia, that defendants have conspired against plaintiff by threatening and intimidating plaintiff in his political activities; defendants have intimidated and harassed plaintiff into foregoing his run for any elected office; defendants deprived plaintiff of access to public facilities on grounds of race; defendants have imposed and applied voting qualification and prerequisites to voting standards, practices and procedures which resulted in a denial and abridgement of plaintiff's right to vote on account of his race or color; defendants have conspired to deny plaintiff's right to privacy; and defendants have conspired to deny plaintiff his right to vote on the basis of his race.

[3]There is no Count Five in plaintiff's Amended Complaint.  See 2011 WL 1215190, at *7 n.3.

pursuant to CONN. GEN. STAT. § 9-390.  Id. at *4-6.  Thus, "[b]ecause the state-authorized endorsement process forms a part of the procedure by which private organizations perform a public function by nominating and giving ballot access to potential political candidates, the actions taken by [defendant] DDTC in furtherance of that endorsement process constitute state action[,]" and plaintiff has "properly alleged" that a state actor has subjected him to unequal treatment on the basis of his race in "discriminatorily exclud[ing him] from the endorsement process on the basis of his race." Id. at *4, 7 (citation omitted).  Accordingly, the "DDTC's activities are only state action insofar as they relate to the carrying out of its authorized powers under [CONN. GEN. STAT.] Section 9-390, to wit the endorsement of a particular candidate." Id. at *4 (citation omitted).

On April 11, 2011, plaintiff filed his Renewed Motion for Prejudgment Remedy against defendant Robinson (Dkt. #75), in response to which defendant Robinson filed an objection fifteen days later. (Dkt. #79).  Plaintiff filed a reply brief and another copy of his Motion for Prejudgment Remedy against defendant Robinson on May 2, 2011.  (Dkts. ##80-81).[4]  Two days later, plaintiff filed an Amended Motion for Prejudgment Remedy against defendant Robinson, with brief in support.  (Dkt. #84).  On September 9, 2011, defendant Robinson filed her brief in opposition (Dkt. #124), and on September 15, 2011, plaintiff filed a reply brief.  (Dkt. #125).  An evidentiary hearing thereon was held before this Magistrate Judge

---

[4]Two days later, plaintiff also filed a Motion for Summary Judgment against defendant Dan Sexton, who has not appeared in this litigation (Dkt. #82; see Dkt. #100), and on June 18, 2011, plaintiff filed a Motion for Summary Judgment against defendants John Orazietti, Ron Sill and Joyce Sill.  (Dkt. #93; see Dkt. #99).  Also on May 4, 2011, defendant Rizzitelli filed a Motion to Remand to State Court, with brief and exhibits in support (Dkt. #85; see Dkts. ##87-88, 91, 103, 106-08, 110, 114), and this case was consolidated with Rizzitelli v. Thompson, 3:11 CV 607(JBA). (Dkt. #86). These motions are pending before Judge Arterton.

on September 19, 2011. (Dkts. ##128-30).[5]  Under the latest scheduling order, all discovery is to be completed by October 28, 2011 and all dispositive motions are to be filed by December 2, 2011. (Dkts. ##130-31).

For the reasons stated below, plaintiff's Motions for Prejudgment Remedy against defendant Robinson (Dkts. ##75, 81 & 84) are <u>denied</u>.

I. DISCUSSION

A. FACTUAL BACKGROUND

As previously indicated, an evidentiary hearing was held before this Magistrate Judge on September 19, 2011, at which plaintiff, Stephanie D'Onofrio, and Shelli Sheridan testified for plaintiff, and defendant Paul Varsanik, Sylvester Fusco, and defendant Christine Robinson testified for defendant Robinson.[6]  All the witnesses, except for plaintiff,[7] testified that on April 21, 2009, members of the DDTC gathered at the DDTC's headquarters at 69 Elizabeth

---

[5]Although plaintiff and defense counsel asked for the opportunity to file post-hearing briefs by October 7, 2011, neither side filed any such briefs.

[6]Plaintiff objected to the presentation of <u>any</u> witnesses for defendant Robinson, insofar as defense counsel merely <u>served</u> upon plaintiff defendant Robinson's proposed witness list, whereas plaintiff properly complied with the Magistrate Judge's order by <u>filing</u> his proposed witness list. (<u>See</u> Dkt. #90, ¶¶ 6-8; Dkt. #122).  The testimony of the witnesses did not vary with regard to any factual issue that is material to the underpinning of this Ruling.

Plaintiff's Exhibit A, a Settlement Agreement, dated December 3, 2009, was admitted for the limited purpose of showing that it was signed by plaintiff and Dan Sexton, but the statements contained therein are not binding against defendant Christine Robinson, and the existence of the Settlement Agreement is not relevant to the pending matter.  <u>See</u> note 11 <u>infra</u>.

Three exhibits of defendant Robinson were marked for identification purposes only: an e-mail captioned, "Defendant's Witness List[]" from defense counsel to plaintiff, dated September 13, 2011 (Exh. 1)(emphasis omitted); Court Docket #30 (Exh. 2); and Court Docket #7 (Exh. 3).

[7]Plaintiff's testimony was limited solely to the alleged Settlement Agreement between him and defendant Sexton.  <u>See</u> note 6 <u>supra</u> and note 11 <u>infra</u>.

Street in Derby to await the results and then celebrate the passage of a referendum.[8]  These witnesses further agreed that the April 21, 2009 gathering did not have anything to do with the DDTC's endorsement of a candidate, as that process occurs in July when the DDTC's caucus is held.

Defendant Varsanik, a former member of the DDTC, testified that as he was exiting the building, walking down the two or three front stairs, defendant Robinson was behind him and when he reached the sidewalk, he heard plaintiff call defendant Robinson a "fat f***ing bitch."  Similarly, defendant Robinson testified that when the referendum was over, she began to walk outside with defendant Varsanik and another gentleman, and when she encountered plaintiff on the stairs, she said "excuse me" to him; plaintiff responded, "I will not excuse you, you fat f***ing bitch," at which point she said to him, "What did you say to me?" According to defendant Robinson, plaintiff then walked away, and she repeated, "What did you just say?"  Sheridan, a former member of the DDTC, Sylvester Fusco, a DDTC member, and defendant Robinson all testified that defendant Robinson followed plaintiff back inside the building.[9]

Sheridan and D'Onofrio, a current member of the DDTC, both testified that during the April 21, 2009 gathering, plaintiff, who was standing with his back to the wall, was approached by defendant Robinson who engaged in, as described by Sheridan, "heated

---

[8]According to D'Onofrio, the room was about the size of Courtroom Five, which is approximately twenty feet by fifty feet, and there were less than twenty people in attendance, as well as approximately four tables with chairs around each table.

[9]Sheridan testified that she did not know what had transpired outside between plaintiff and defendant Robinson, but when they entered, it "definitely changed the tone of the room."

Defendant Varsanik testified that he and the other gentlemen did not return to the DDTC headquarters but instead continued to walk down Elizabeth Street, so that he did not witness what occurred inside.

contact" with plaintiff.  According to D'Onofrio, defendant Robinson "could[ not] stop talking bad" about plaintiff that evening and when defendant Robinson approached plaintiff, several people tried to hold her back because she looked as though she was going to "attack" plaintiff.

Fusco, who has also been the Sheriff or Constable of the Town of Derby for twelve to fourteen years and who was inside the DDTC headquarters, testified that it was defendant Robinson whose back was to the wall and plaintiff was standing a body width distance from her when they engaged in a "heated argument" that Fusco "assum[ed]" started outside and was then was carried inside.  According to defendant Robinson, plaintiff did not respond to her, and Fusco came between them, placed his arms at the width of his body to separate them,[10] and asked them to calm down, after which defendant Robinson left the building.

D'Onofrio, Sheridan, defendant Varsanik, Fusco and defendant Robinson uniformly testified that there were no racial slurs or epithets uttered at this gathering, nor were any uttered at any meeting of the DDTC.[11]

### B. LEGAL STANDARD FOR A PREJUDGMENT REMEDY

A prejudgment remedy "is generally intended to secure the satisfaction of a judgment should plaintiff prevail."  Cendant Corp. v. Shelton, No. 3:06 CV 854 (JCH), 2007 WL 1245310, at *2 (D. Conn. Apr. 30, 2007)(citation omitted).  Federal Rule of Civil Procedure

---

[10]Sheridan and D'Onofrio testified that plaintiff and defendant Robinson were separated by chairs and/or people between them.  See also note 8 supra.

[11]There was a great deal of testimony involving defendant Dan Sexton and a Settlement Agreement, none of which is relevant to the issue pending before the Court.  This Settlement Agreement was discussed in some detail in Thompson v. Rizzitelli, No. CV 105010579S, 2010 WL 5491291 (Conn. Super. Ct. Dec. 6, 2010).

64 permits a plaintiff to utilize the state prejudgment remedies available to secure a judgment that might ultimately be rendered in an action. See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County, 415 U.S. 423, 436 n. 10 (1974).  Pursuant to the Connecticut Prejudgment Remedy statute, CONN. GEN. STAT. § 52-278d(a), the standard for issuing a prejudgment remedy is probable cause, so that a prejudgment remedy is appropriate

> [i]f the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, finds that the [movant] has shown probable cause that such a judgment will be rendered in the matter in the [movant's] favor in the amount of the prejudgment remedy sought . . . .

CONN. GEN STAT. § 52-278d(a).  In the words of now Chief United States District Judge Alvin W. Thompson:

> The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. Probable cause is a flexible common sense standard.  It does not demand that a belief be correct or more likely true than false.

Qualitative Reasoning Sys., Inc. v. Computer Scis. Corp., No. 3:98 CV 554 (AWT), 2000 WL 852127, at *10 (D. Conn. Mar. 31, 2000)(internal quotations & multiple citations omitted).

A prejudgment remedy proceeding is "only concerned with whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action."  Benton v. Simpson, 78 Conn. App. 746, 751-52, 829 A.2d 68, 72-73 (App. Ct. 2003)(citation & internal quotations omitted). Further, while a prejudgment remedy hearing "is not contemplated to be a full scale trial on the merits of plaintiff's claims," Bank of Boston Conn. v. Schlessinger, 220 Conn. 152, 156 (1991)(multiple citations & internal quotations omitted), a plaintiff is "bound to furnish proof

of his damage with reasonable probability, and not leave the trial court to speculation and conjecture." Mullai v. Mullai, 1 Conn. App. 93, 95, 468 A.2d 1240, 1242 (App. Ct. 1983)(per curiam).   After a hearing, the Court must "consider not only the validity of the plaintiff's claim but also the amount that is being sought." Calfee v. Usman, 224 Conn. 29, 38 (1992)(citation & internal quotations omitted).

  C. PROBABLE CAUSE

   Plaintiff's application for prejudgment relief turns upon whether plaintiff has shown "probable cause" that a judgment will enter in his favor.  CONN. GEN. STAT. § 52-278(d)(a)(1). "Probable cause"  has been defined by the Connecticut courts as "'a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it.'" Walpole Woodworkers, Inc. v. Atlas Fencing, Inc., 218 F. Supp. 2d 247, 249, quoting Three S. Development Co. v. Santore, 193 Conn. 174, 175, 474 A.2d 795 (1984)(citation omitted). The standard of "probable cause" is less demanding than the "preponderance of the evidence" or the "likelihood of success" standards.  Cendant Corp., 2007 WL 1245310 at *3. Plaintiff need not "prove [his] case by a preponderance of the evidence, but must show that there is probable cause to sustain the validity of [his] claim." Walpole Woodworkers, 218 F. Supp. 2d at 249 (citation omitted).

   As stated above, the legal issues in this case are limited by Judge Arterton's Ruling on Defendants' Motion to Dismiss.  Accordingly, in order for plaintiff to establish probable cause that plaintiff will secure satisfaction of a judgment should he prevail, plaintiff must satisfy his burden of establishing that the testimony presented at the hearing establishes probable cause to sustain the validity of his remaining claims against defendant Robinson.

In the remaining claims -- Counts Four, Six, Seven and Eight -- plaintiff alleges that he was "intimidated through threats by defendant . . . Robinson who assaulted the plaintiff and stated to the plaintiff on April 21, 2009, 'I'm going to kill you.'" (Amended Complaint ¶ 144; see id. ¶¶ 160, 173, 186). Additionally, in Count Four, plaintiff alleges that defendant Robinson "shouted the plaintiff down and refused to allow the plaintiff to speak at a [DDTC] meeting on March 25[,] 2009." (Id. ¶ 143). As discussed above, the testimony relating to defendant Robinson's actions towards plaintiff concerned only the April 21, 2009 gathering following the passage of a referendum. As the testimony confirmed, the political endorsement of the DDTC took place in July 2009, three months later, and at the hearing, plaintiff failed to establish that the "heated" exchange between defendant Robinson and plaintiff on April 21, 2009 resulted in a denying him political access.

In her Ruling on Defendants' Motion to Dismiss, Judge Arterton held that plaintiff has properly alleged in Counts Four, Six, Seven, and Eight that the defendants subjected him to unequal treatment on the basis of his race in excluding him from the endorsement process ceded to the DDTC pursuant to CONN. GEN. STAT. § 9-390. 2011 WL 1215190, at *4,6-7. However, based on the limited relevant evidence presented at the prejudgment remedy hearing against defendant Robinson, plaintiff has failed to satisfy his low burden that probable cause exists that a judgment will enter against defendant Robinson based on the defendant Robinson's actions on April 21, 2009. While plaintiff offered a Settlement Agreement, dated December 3, 2009, such evidence was only admitted for the limited purpose of showing that it was signed by plaintiff and defendant Dan Sexton; the statements contained therein, relating to a conspiracy to deprive plaintiff political access, were not

admitted into evidence as binding against defendant Robinson.[12]    In the absence of any evidence that the "heated" exchange between plaintiff and defendant Robinson led to the denial of plaintiff's right to association, denied him the endorsement of the DDTC, denied him the right to vote for the endorsed Democratic candidate of his choice, or had anything to do with plaintiff's race, plaintiff has failed to establish probable cause that a judgment will enter against defendant Robinson based on the activities of April 21, 2009.[13]

## II. CONCLUSION

For the reasons stated above, plaintiff's Applications for Prejudgment Remedy (Dkts. ##75, 81, 84) are <u>denied</u>.

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut;  <u>Caidor v. Onondaga County</u>, 517 F.3d 601, 603-05 (2d Cir. 2008)**(failure to file timely objection to Magistrate Judge's discovery ruling will preclude further appeal to Second Circuit)**.[14]

---

[12]Furthermore, plaintiff's testimony regarding this Settlement Agreement related to the process by which the agreement was negotiated and signed, and on cross examination, defense counsel challenged the authenticity of the document itself.  There was no testimony as to the denial of political access as a result of, or relating to, the April 21, 2009 exchange.

[13]In light of this conclusion, the Court need not address the issue of damages or bond.

[14]As U.S. District Judge Gerard L. Goettel held nearly fifteen years ago, a referral to Magistrate Judge "for the purpose of a hearing on prejudgment remedy" is not a referral for a recommended ruling, effective only upon a District Court Judge's review and adoption, pursuant to 28 U.S.C. § 636(b)(1)(B), but rather is a referral pursuant to 28 U.S.C. § 636(b)(1)(A).  <u>Aetna Life Ins. Co. v. Tooth Savers Dental Serv.</u>, No. 96 CV 102453, 1997 WL 102453 (D. Conn. Feb. 4, 1997); <u>see also Balzer v. Millward</u>, 3:10 CV 1740 (SRU), 2011 WL 1547211, at *5, n. 7 (D. Conn. Apr. 21, 2011)(Fitzsimmons, MJ); <u>CapitalSource Fin. LLC v. Autorino</u>, 3:09 CV 2148 (RNC), 2011 WL 1195857, at *1, n.1 (D. Conn. Mar. 11, 2011)(Martinez, MJ); <u>United of Omaha Life Ins. Co. v. Conn. Student Loan Found'n</u>, 718 F. Supp. 2d 277, 286 (D. Conn. 2010)(Smith, MJ); <u>SS & C Techs., Inc. v. Providence Inv. Mgmt.</u>, 582 F. Supp. 2d 255, 256, n.1 (D. Conn. 2008)(Smith, MJ); <u>Rubin v.</u>

Dated at New Haven, Connecticut, this 14th day of October, 2011.


  /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge

---

Donoghoe, 3:05 CV 1644 (AHN), 2006 WL 3254481, at *12, n.20 (D. Conn. Oct. 20, 2006)
(Fitzsimmons, MJ); Mammoet USA NE Corp. v. Dick Corp., 3:02 CV 2022 (MRK), 2003 WL
22937724, at *1 (D. Conn. Oct. 9, 2003)(Kravitz, DJ, approving Ruling of Margolis, MJ, over
objection); cf. Fleet Dev. Ventures, LLC v. Brisker, 3:06 CV 570 (RNC), 2006 WL 2772686, at *13-
14 (D. Conn. Sept. 12, 2006)(Fitzsimmons, MJ).